John Frederick **DORMAN**, Appellant,

v.

**EMERSON ELECTRIC COMPANY**, Appellee.

No. 93–2222.

United States Court of Appeals, Eighth Circuit.

Submitted Dec. 15, 1993.

Decided May 5, 1994.

Rehearing Denied June 7, 1994.

Daniel J. McMichael, Chesterfield, MO, argued, for appellant.

Bruce D. Ryder, St. Louis, MO, argued, for appellee.

Before McMILLIAN, FAGG and BOWMAN, Circuit Judges.

BOWMAN, Circuit Judge.

John Frederick Dorman, a Canadian citizen, brought this diversity action against Emerson Electric Company (Emerson), a Missouri corporation, to recover for personal injuries he sustained while operating a saw designed by Emerson. Dorman's cause of action proceeded upon theories of strict products liability, breach of warranty, negligence, and res ipsa loquitur. Pursuant to Federal Rule of Civil Procedure 12(f), Emerson moved to strike the claims based on strict liability, breach of warranty, and res ipsa

loquitur. The District Court, applying Missouri choice-of-law rules, held that Canadian law applies to the claims, granted Emerson's motion to strike, and dismissed the entire complaint. Dorman appeals the District Court's choice-of-law conclusions and the granting of the motion to strike. He also argues that the District Court abused its discretion in dismissing his negligence claim. We affirm in part and reverse and remand in part.[1]

### I.

Dorman is a resident of Lantzville, British Columbia, Canada. In 1989 he purchased a ten-inch Sears/Craftsman Professional miter saw from a Sears Canada, Inc., retail outlet in Nanaimo, British Columbia, to use on various projects he had been hired to perform. Shortly after purchasing the saw, Dorman removed the upper and lower guards on the saw and reattached the blade so that he could make a deeper cut with the saw. When Dorman then turned the saw on, the rotating blade disengaged at a very high speed and struck and almost completely severed his arm below the shoulder. The arm was surgically reattached, but Dorman has only limited use of it.

In July 1991 Dorman brought this action against Emerson in the Eastern District of Missouri. Emerson admits it designed and design-tested in St. Louis the kind of saw that injured Dorman. The particular saw that injured Dorman was manufactured in Taiwan by P & F, Inc., a Taiwanese corporation, and was quality-control tested in Taiwan by both P & F, Inc., and Emerson. The saw then was purchased by Emerson Electric Canada, Ltd. (EECL), a Canadian corporation, and was shipped directly from Taiwan to Vancouver, Canada, where EECL sold the saw to Sears Canada, from which Dorman purchased the saw.

After the District Court denied Emerson's motion to dismiss on the grounds of forum non conveniens, 789 F.Supp. 296, Emerson filed its motion to strike pursuant to Federal Rule of Civil Procedure 12(f)[2]. Emerson argued that the District Court should apply Missouri's choice-of-law rules and that for both tort and contract actions Missouri courts apply the most-significant-relationship test found in the Restatement (Second) of Conflict of Laws § 145 (1971) (the Restatement). Under this analysis, Emerson argued that Canadian law governs the disposition of the case and that Dorman's claims based upon strict products liability, breach of warranty, and res ipsa loquitur were materially deficient as a matter of Canadian law and should be stricken. Emerson recognized that Dorman's negligence claim is cognizable under Canadian law and did not move to strike it.

The District Court granted Emerson's motion to strike, concluding that, under Missouri's choice-of-law rules, Canadian law is the appropriate law to apply to this case and that the challenged claims are materially deficient under Canadian law. Without discussing Dorman's negligence claim, the court dismissed Dorman's entire complaint, 815 F.Supp. 1287.

On appeal, Dorman argues that the District Court erred in determining that Canadian law, rather than Missouri law, governs the case. Alternatively, he contends that if Canadian law does apply, the court erroneously concluded that his claims are materially deficient under Canadian law. Finally, Dorman argues that the court abused its discretion when it dismissed his negligence claim. We

---

1. While this appeal was pending Emerson filed a motion to strike pages one through fifty of Dorman's supplemental appendix, which consist of the deposition of John Dorman taken subsequent to the District Court's dismissal of his complaint. In his response, Dorman acknowledges that this deposition falls outside of the record on appeal and submits, and seeks permission to file, an amended statement of facts based on materials that are properly part of the record. We grant Emerson's motion to strike and accept for filing Dorman's amended statement of facts.

2. Under Federal Rule of Civil Procedure 12(f), a court may strike from any pleading "any redundant, immaterial, impertinent, or scandalous matter." Fed.R.Civ.P. 12(f). The motion made by Emerson more appropriately would have been labeled a motion under Rule 12(b)(6) to dismiss for failure to state a claim upon which relief can be granted. The District Court made nothing of the misdesignation of the motion and neither do we.

affirm the District Court's conclusions that Canadian law is the appropriate law to apply to this case and that under Canadian law Dorman's claims of strict products liability, breach of warranty, and res ipsa loquitur are materially deficient. We reverse the District Court's dismissal of Dorman's negligence claim, however, and remand for further proceedings on that claim.

## II.

### A.

■ Dorman argues that the District Court erred when it concluded that Canadian law rather than Missouri law governs his cause of action. A district court, sitting in diversity, must follow the choice-of-law approach prevailing in the state in which it sits. *Birnstill v. Home Sav. of Am.*, 907 F.2d 795, 797 (8th Cir.1990). The District Court correctly recognized that Missouri choice-of-law rules must be used to decide whether Canadian or Missouri substantive law governs Dorman's action. For both tort and contract claims, Missouri courts apply the most-significant-relationship test as defined in the Restatement. *Galvin v. McGilley Memorial Chapels*, 746 S.W.2d 588, 590 (Mo.Ct.App. 1987). Under this test, the identity of the state having the most significant relationship will depend upon the nature of the cause of action and upon the particular legal issue in dispute. Whether the District Court's analysis under the forum state's choice-of-law rules was proper is a legal issue subject to de novo review. *Birnstill*, 907 F.2d at 797.

■ Section 145 of the Restatement establishes the general rule applicable to all torts: the rights and liabilities of the parties will be determined by the law of the state with the most significant relationship to the accident and the parties. Section 146 of the Restatement establishes the precise rule with respect to conflicts issues arising out of personal injury actions:

> In an action for a personal injury, the local law of the state where the injury occurred determines the rights and liabilities of the parties, unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 [3] to the occurrence and the parties, in which event the local law of the other state will be applied.

This formulation essentially establishes a presumption that the state with the most significant relationship is the state where the injury occurred, absent an overriding interest of another state based on the factors articulated in section 6. In ascertaining whether such an overriding interest exists, the section 6 factors must be evaluated taking into account the contacts listed in section 145 according to their relative importance to the particular issue:

> (a) the place where the injury occurred,
>
> (b) the place where the conduct causing the injury occurred,
>
> (c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and
>
> (d) the place where the relationship, if any, between the parties is centered.

*Kennedy v. Dixon*, 439 S.W.2d 173, 181 (Mo. 1969) (en banc) (quoting Restatement § 145(2)).

■ In cases in which the injury and the conduct causing the injury occur in the same state, the Restatement principles are easy to apply. *See* Restatement § 146 cmt. d (noting that, subject only to rare exceptions, the local law of the state where the conduct and the injury occurred will be applied). The choice of law becomes more complex, however, where the injury and the conduct causing the injury take place in separate

---

**3.** Section 6 articulates the following factors to be considered when determining the proper choice of law:
 (a) the needs of the interstate and international systems,
 (b) the relevant policies of the forum,
 (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
 (d) the protection of justified expectations,
 (e) the basic policies underlying the particular field of law,
 (f) certainty, predictability, and uniformity of result, and
 (g) ease in the determination and application of the law to be applied.
Restatement § 6.

states. Missouri law establishes that where it is difficult to see clearly that a particular state has the most significant relationship to an issue, the trial court should apply the *lex loci delicti* rule; that is, it should apply the substantive law of the place where the injury occurred. *Kennedy,* 439 S.W.2d at 185. This rule, however, should not be used by the courts as a means of abdicating their responsibility to determine which state has the most significant contacts. *Id.* With these Missouri choice-of-law rules in mind, we turn to our consideration of whether the substantive law of Canada or Missouri governs Dorman's case.

### B.

 Consistent with Missouri's adoption of the Restatement principles, we begin our analysis with the presumption created by section 146 in favor of applying the law of the jurisdiction in which the injury occurred. In this case, the section 146 formulation translates into a presumption in favor of applying the law of Canada, the place where Dorman's injury occurred. Section 146 specifies that the presumption may be rebutted, however, if, as demonstrated by the principles enunciated in section 6 in light of the contacts listed in section 145, another state has a more significant relationship to the accident and the parties with respect to the particular issue in dispute. Under Missouri law, it is not the number of contacts with a particular state that is crucial to the analysis but the quality of these contacts. *Nelson v. Hall,* 684 S.W.2d 350, 359 (Mo.Ct.App.1984).

A detailed analysis of all of the section 6 factors is unwarranted. The Restatement commentary explains that paragraphs (d) and (f), which deal with protection of justified expectations and certainty, predictability, and uniformity of result, are implicated only minimally where personal injury claims arising from accidents are involved. This is true because persons who unintentionally cause injury usually act without contemplating the law that may be applied to determine the legal consequences of their conduct. Restatement § 145 cmt b. Similarly, paragraph (a), which lists for consideration the needs of the interstate and international systems, is

not ordinarily implicated by actions to recover for personal injuries, *see Kenna v. So–Fro Fabrics, Inc.,* 18 F.3d 623, 626–27 (8th Cir. 1994), and does not appear to be implicated by Dorman's action. Consideration of ease in the determination and application of the law to be applied, paragraph (g), yields no discernible advantage to Missouri law over Canadian law in this case. Looking to the remaining section 6 factors, paragraphs (b), (c), and (e), dealing with the policies and interests of the jurisdictions involved and the field of law to be applied, we are unable to conclude that Missouri's relationship to the case is so pivotal as to overcome the presumption that Canada, as the state where the injury occurred, is the state with the most significant relationship.

In his attempt to overcome the section 146 presumption in favor of Canadian law, Dorman essentially makes three arguments. First, he contends that Missouri's interest is dominant because the particular issue in dispute in this case is whether Emerson negligently or defectively designed the saw, so that special significance must be given the fact that the alleged cause of the injury, the negligent or defective design of the saw, took place in St. Louis. In essence, he argues that because the kind of saw that injured Dorman was designed and design-tested in St. Louis, Missouri has a more significant relationship to the accident than does Canada.

We find this argument unpersuasive. Although the saw's having been designed in St. Louis is not without significance to the choice-of-law analysis, we do not believe that this fact, without more, is sufficient to overcome the section 146 presumption in favor of applying the law of the place where the injury occurred. Indeed, to accept Dorman's argument would render the section 146 presumption meaningless in virtually every products liability case, even though section 146 is devoid of language that would suggest an intent to exclude products liability cases from the scope of the presumption. Accordingly, we conclude that we must evaluate the factors set out in sections 6 and 145 without the exaggerated emphasis that Dorman

seeks to put on St. Louis as the place where the saw was designed and tested.[4]

■ Second, Dorman argues that Missouri law should control because Missouri, as the state where the alleged harmful conduct occurred, has "a significant interest in deterring wrongful conduct by one of its corporate citizens." Appellant's Brief at 20. However, the Missouri law of products liability that Dorman requests this Court to apply, while of course concerned with deterring wrongful conduct, is even more concerned with compensating injured victims and protecting the expectation interests of the victim. *Asaro v. Cardinal Glennon Mem. Hosp.,* 799 S.W.2d 595, 599 (Mo.1990) (en banc); *see generally* W. Page Keeton et al., Prosser and Keeton on the Law of Torts § 1 at 5–6, § 2 at 7, § 4 at 26 (5th ed. 1984); John W. Wade, *Tort Liability for Products Causing Physical Injury and Article 2 of the U.C.C.,* 48 Mo. L.Rev. 1, 7 (1983). In *Dunaway v. Fellows,* 842 S.W.2d 166 (Mo.Ct.App.1992), upon which Dorman places considerable reliance, the court had before it a Missouri statute immunizing dram shops from liability for accidents involving intoxicated customers. In that case, a customer of the defendant had consumed intoxicating beverages at the defendant's drinking establishment in Missouri and then had driven into Illinois where he negligently caused an accident that injured the plaintiffs. The Missouri Court of Appeals was called upon to decide whether Illinois or Missouri law would control the issue of dram shop liability. The court applied the Missouri statute, concluding that Missouri's public policy would be severely impaired if resident tavern owners no longer could rely on the protection granted to them by the state legislature. *Id.* at 169. Therefore, while in *Dunaway* a compelling public policy required the court to apply Missouri law, Missouri's interest in ensuring that its citizens are compensated for loss is not implicated in this case where a Canadian citizen brings suit for an injury that occurred in Canada. *See Acapolon Corp. v. Ralston Purina Co.,* 827 S.W.2d 189, 194 (Mo.1992) (en banc) ("Missouri's interest in assuring that its corporations comply with adequate design standards when designing products for manufacture and use abroad is less substantial than the foreign nation's interest in protecting its citizens from injury and setting standards for the manufacture and distribution of products within its borders.").

Third, Dorman argues that Canada has no interest in this litigation because the occurrence of the accident there was merely fortuitous, and thus Missouri's interests are paramount in the section 6 evaluation. As support for this proposition he relies upon the Restatement commentary and *Kozoway v. Massey–Ferguson Inc.,* 722 F.Supp. 641 (D.Colo.1989). The Restatement commentary advises that the place of the injury is unimportant to the selection of the applicable state law if it is fortuitous in that it bears little relation to the occurrence and the parties. Restatement § 145 cmt. e. The quintessential example of a contact being fortuitous is the "flyover" case where the plaintiff is injured while passing over a state during air flight, so that the place of the injury is inconsequential. *See Nelson,* 684 S.W.2d at 352 n. 3; *see also Jaurequi v. John Deere Co.,* 986 F.2d 170, 175 (7th Cir.1993). Such is not the case here. To the contrary, the place of Dorman's injury bears a strong relationship to the occurrence and the parties, as it is the place where Dorman purchased the saw, the place where he used the saw, and his domicile.

Neither are we persuaded that the place of the injury is simply fortuitous by *Kozoway,* a federal trial court's interpretation of Colorado choice-of-law principles. In *Kozoway,* 722 F.Supp. at 642, a Canadian citizen brought suit in federal court in Colorado against a Maryland corporation and an Iowa corporation, both with their principal places of busi-

---

4. We also observe that, although Dorman's motions to the District Court and his briefs on appeal focus on the allegations of negligent or defective design, his complaint alleges that Emerson "was negligent in designing, manufacturing and selling" the saw. Appendix for Appellant at 5. The saw that injured Dorman was manufactured in Taiwan and delivered to and sold in Canada without ever entering the United States, providing yet another reason to assign no additional significance to St. Louis as the place where the injury-causing conduct allegedly occurred.

ness in Iowa. Basing his suit on products liability claims, the plaintiff sought to recover for personal injuries that occurred in Canada but allegedly were caused by a product manufactured in Iowa. The court concluded that under Colorado choice-of-law principles the occurrence of the accident in Canada was merely fortuitous, that all the allegedly wrongful conduct took place in Iowa, and that Iowa law should govern. *Id.* at 643. While Colorado and Missouri both have adopted the most-significant-relationship approach, we find no indication that the Missouri courts would follow the *Kozoway* analysis, and we decline to apply it here.

We conclude that Canada's interests in and contacts with this case are at least as substantial as Missouri's. Accordingly, the presumption established in section 146 in favor of applying the law of the jurisdiction where the injury occurred has not been overcome, and the District Court therefore was correct in holding that the case is governed by Canadian law.

### III.

■ Alternatively, Dorman argues that, even if Canadian law governs the disposition of his case, the District Court erred in concluding that Canada does not recognize a cause of action sounding in strict products liability and that the rule of res ipsa loquitur is inapplicable under the facts alleged in Dorman's complaint.[5] We review de novo the District Court's interpretations of Canadian law. *Banco de Credito Indus., S.A. v. Tesoreria Gen. de la Seguridad Social de Espana*, 990 F.2d 827, 832–33 (5th Cir.1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 877, 127 L.Ed.2d 73 (1994); *Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468, 1473 (9th Cir.), *cert. denied*, —— U.S. ——, 113 S.Ct. 454, 121 L.Ed.2d 325 (1992).

### A.

■ The Canadian courts have held unequivocally that Canadian law does not make available to plaintiffs a theory of strict prod-

ucts liability. *Meisel v. Tolko Indus. Ltd.*, 105 B.C.J. 162, 169 (B.C.S.Ct.1991) (unpublished) (quoting *Phillips v. Ford Motor Co. of Canada*, 18 D.L.R.(3d) 641, 657 (Ont.Ct.App.1971) (Schroeder, J.A., concurring) ("[O]ur Courts do not, in product liability cases, impose upon manufacturers, distributors or repairers, as is done in some of the States of the American union, what is virtually strict liability.")). Based on the suggestions of several commentators, Dorman argues that, although in theory the Canadian courts have not endorsed a comprehensive principle of strict products liability, the Canadian courts in fact are imposing strict liability on manufacturers. However, the primary source cited by Dorman recognizes that a theory of strict products liability is not cognizable under Canadian law. S.M. Waddems, Products Liability 131 (2d ed. 1980). More importantly, the Canadian courts have spoken decisively to this issue. We conclude that the District Court correctly determined that Canada does not recognize a cause of action sounding in strict products liability.

### B.

■ Res ipsa loquitur as interpreted by the Canadian courts is quite similar to the American version. Although commonly referred to as a separate doctrine, in reality it simply describes the situation where circumstantial evidence is used to infer the defendant's negligence. *Phillips*, 18 D.L.R.(3d) at 657. "The foundation of the plaintiff's action must be negligence, and where [res ipsa loquitur] is applicable.... it merely operates to justify the tribunal of fact inferring negligence on the part of the defendant from the proven circumstances...." 1 G.H.L. Fridman, Q.C., The Law of Torts in Canada 309–10 (1989). To employ res ipsa loquitur the plaintiff must prove that (1) the object that caused the injury was in the sole control and management of the defendant and that (2) the cause of the accident is unknown and the inference of negligence is apparent from the nature of the accident. *Elfassy v. Sylben Invs. Ltd.*, 91 D.L.R.(3d) 96, 99 (Ont.High

---

5. Dorman's complaint alleged breach of warranty only under the Missouri provisions of the Uniform Commercial Code and not under Cana-

dian law. Accordingly, he does not challenge the District Court's dismissal of his breach of warranty claim as a matter of Canadian law.

Ct.J.1978); *Phillips*, 18 D.L.R.(3d) at 658 (Schroeder, J.A., concurring); *Guerard Furniture Co. v. Horton*, 90 D.L.R.(3d) 379, 387 (B.C.Yale County Ct.1978).

Dorman has failed to meet this standard. The saw was in his sole control and management when the accident occurred. Moreover, the cause of the accident is known. Dorman's injury occurred when he removed the guards from the saw and the blade disengaged. His entire case is directed at proving that the blade disengaged because Emerson negligently or defectively designed and manufactured the saw. These are not the sort of facts about which it can be said that the "thing speaks for itself." Res ipsa loquitur is reserved for those situations in which an accident or injury has occurred, no one can explain why it has occurred, and yet it is reasonable to infer that the accident would not have occurred in the ordinary course of things if the defendant had exercised proper care. *See* 25 *Canadian Encyclopedic Digest* § 468 (West.3d ed. 1991); Fridman, *supra*, at 313–14. The cases of the mouse in the sealed bottle of Coca–Cola and the snail in the corked bottle of ginger beer are cited by Canadian authorities as cases that state facts to which res ipsa loquitur properly applies. *See, e.g., Phillips*, 18 D.L.R.(3d) at 660. In contrast, in *Elfassy*, 91 D.L.R.(3d) at 97, 99, the plaintiff's injury occurred because a fire in the plaintiff's building caused a sprinkler system to be activated, which in turn caused the plaintiff's business to be flooded. As the cause of the accident was known, res ipsa loquitur was inapplicable. Dorman alleges facts that, like those in *Elfassy*, do not support application of the res ipsa loquitur inference of negligence.

Based on our de novo analysis of Canadian law, we conclude that the District Court properly dismissed Dorman's causes of action based on strict liability and res ipsa loquitur.

### IV.

Finally, Dorman argues that, even if Canadian law properly applies and the previously mentioned claims fail, the District Court abused its discretion in dismissing his complaint in its entirety. During the oral argument of this appeal, counsel for Emerson conceded that Emerson's motion to strike did not challenge Dorman's negligence claim. Instead, the motion acknowledged that the negligence claim is cognizable under Canadian law. Moreover, in its memorandum opinion, the District Court discussed only those claims challenged by Emerson. We thus conclude that the dismissal of Dorman's negligence claim was an inadvertent error, and we reinstate that claim.

The judgment of the District Court is affirmed insofar as it dismisses Dorman's claims based on strict liability, breach of warranty, and res ipsa loquitur. The judgment is reversed insofar as it dismisses his negligence claim. The negligence claim is reinstated and the case is remanded to the District Court for further proceedings.