No. 95-3492

Mary Ann Horn, As Surviving       *
Spouse of James F. Horn, Sr.,     *
Deceased, Individually and on     *
behalf of his Children and        *
Next of Kin, and as the           *
Personal Representative of        *
his Estate,                       *
                                  *
                Appellant,        *
                                  *
     v.                           * Appeal from the United States
                                  * District Court for the
B.A.S.S., doing business as       * Western District of Missouri
B.A.S.S. National Federation,     *
Inc.; Texas B.A.S.S. Federation,  *
Inc., a Texas Corporation;        *
Missouri B.A.S.S. Anglers         *
Sportsman Society Chapter         *
Federation, doing business as     *
Missouri B.A.S.S. Federation,     *
Inc.,                             *
                                  *
                Appellees.        *

Submitted:  March 15, 1996

Filed:  July 8, 1996

Before McMILLIAN, BEAM and HANSEN, Circuit Judges.

McMILLIAN, Circuit Judge.

     Mary Ann Horn (plaintiff) appeals from a final order entered in the United States District Court[1] for the Western District of Missouri granting summary judgment in favor of B.A.S.S., Inc.,

_____

[1]The Honorable Scott O. Wright, United States District Judge for the Western District of Missouri.

Texas B.A.S.S. Federation, Inc., and Missouri B.A.S.S. Anglers Sportsman Society Chapter Federation (defendants), and dismissing her action for the wrongful death of her husband James F. Horn, Sr.  Horn v. B.A.S.S., Inc., No. 94-4386-CV-C-5 (W.D. Mo. Sept. 7, 1995).  For reversal, plaintiff argues the district court erred in holding defendants owed no duty of care to Horn.  For the reasons discussed below, we affirm the judgment of the district court.

BACKGROUND

Defendants organize commercial fishing tournaments and had scheduled a fishing tournament at the Lake of the Ozarks, Missouri, on June 15-17, 1994.  Defendants had designated June 12-14, 1994, as tournament "practice" days.  In order to prevent "scouting," contestants were not allowed to fish on the lake for the 14 days before the tournament except for the three tournament practice days.  Contestants were not required to do anything on the tournament practice days other than register for the tournament on the first and second tournament practice days.  On June 13, 1994, one of the tournament practice days, Horn was killed when a boat operated by Robert Dunlap,[2] a resident of Texas and a tournament contestant, collided with Horn's boat.  Horn was not participating in the tournament. The accident occurred during the late afternoon.  According to Dunlap's deposition, he had finished practicing for the day and was returning home.  He was approaching a fuel pier and had been looking to his right and watching another boat and some jet skis.  He did not notice Horn's boat off to his left, until just before the collision, when it was about 60' away.  Dunlap attempted to turn his boat to the left, which is the wrong way according to boating safety regulations.  It is undisputed that Dunlap's failure to keep a proper lookout contributed to cause the fatal accident.

---

[2]Dunlap reached a settlement with Horn and is no longer a party in the present case.

-2-

Plaintiff filed this wrongful death action against defendants in federal district court. Federal jurisdiction was based on diversity of citizenship. Plaintiff alleged that defendants negligently organized the tournament by failing to protect the public from tournament-related hazards, in particular, the reckless operation of high-speed fishing boats by tournament contestants. Defendants moved for summary judgment, arguing that plaintiff could not establish, as a matter of law, that they had a duty to protect Horn or that they caused Horn's death. The district court held that defendants lacked sufficient control over a tournament contestant on a practice day and thus had no duty to protect Horn. Slip op. at 6. This appeal followed.

DISCUSSION

For reversal, plaintiff argues the district court erred in holding that defendants, as the organizers of a public event on public waters, had no duty to take reasonable precautions to protect the public from foreseeable risks of harm. Plaintiff also argues the district court erred in granting summary judgment because there were disputed issues of material fact as to the foreseeability of the risk of harm, cause and defendants' degree of control over tournament contestants on practice days. Defendants argue the district court correctly granted summary judgment in their favor because plaintiff could not establish as a matter of law either duty or causation. For the reasons discussed below, we affirm the judgment of the district court but on a theory different from that employed by the district court. E.g., B.B. v. Continental Insurance Co., 8 F.3d 1288, 1291 (8th Cir. 1993) (noting court of appeals can affirm on basis other than those employed by trial court). We hold plaintiff failed as a matter of law to establish causation.

We review a grant of summary judgment de novo. The question before the district court, and this court on appeal, is whether the

-3-

record, when viewed in the light most favorable to the non-moving party, shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); e.g., Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). Where the unresolved issues are primarily legal rather than factual, summary judgment is particularly appropriate. E.g., Crain v. Board of Police Comm'rs, 920 F.2d 1402, 1405-06 (8th Cir. 1990).

As noted above, the district court applied Missouri substantive law. Jurisdiction over this matter is founded on diversity, and, because the district court was located in Missouri, we look to that state's choice of law rules to determine which body of substantive law to apply. E.g., Schoffman v. Central States Diversified, Inc., 69 F.3d 215, 219 n.10 (8th Cir. 1995). We review the district court's choice of law analysis de novo. E.g., Birnstill v. Home Savings of America, 907 F.2d 795, 797 (8th Cir. 1990).

For tort (and contract) claims, Missouri courts apply the "most significant relationship" test found in the Restatement (Second) of Conflict of Laws § 145 (1971). E.g., Dorman v. Emerson Electric Co., 23 F.3d 1354, 1358 (8th Cir.) (citing Galvin v. McGilley Memorial Chapels, 746 S.W.2d 588, 590 (Mo. Ct. App. 1987)), cert. denied, 115 S. Ct. 428 (1994). "Under this test, the identity of the state having the most significant relationship will depend upon the nature of the cause of action and upon the particular legal issue in dispute." Id.

> In an action for a personal injury, the local law of the state where the injury occurred determines the rights and liabilities of the parties, unless, with respect to the particular issue, some other state has a more significant relationship . . . to the occurrence and the parties, in which event the local law of the other state will be applied.

Restatement (Second) of Conflict of Laws § 146. "This formulation essentially establishes a presumption that the state with the most significant relationship is the state where the injury occurred . . . ." Dorman v. Emerson Electric Co., 23 F.3d at 1358. "In cases in which the injury and the conduct causing the injury occur in the same state, the Restatement [(Second) of Conflict of Laws] principles are easy to apply." Id., citing Restatement (Second) of Conflict of Laws § 146 comment. d (noting that, subject only to rare exceptions, local law of state where conduct and injury occurred will be applied). In the present case, the conduct, the accident and the injury occurred in Missouri. We hold the district court correctly determined, under Missouri choice of law rules, that Missouri had the most significant relationship to the accident and the parties and thus correctly applied Missouri substantive law.

To prove a negligence claim under Missouri law, the plaintiff must establish

> (1) [a] legal duty on the part of the defendant to conform to a certain standard of conduct to protect others against unreasonable risks; (2) a breach of that duty; (3) a proximate cause between the conduct and the resulting injury; and (4) actual damages to the claimant's person or property.

Hoover's Dairy, Inc. v. Mid-America Dairymen, Inc., 700 S.W.2d 426, 431 (Mo. 1985) (banc); see, e.g., Zafft v. Eli Lilly & Co., 676 S.W.2d 241, 244 (Mo. 1984) (banc). "'But for' [causation] is an absolute minimum for causation because it is merely causation in fact." Callahan v. Cardinal Glennon Hospital, 863 S.W.2d 852, 862 (Mo. 1993) (banc).

> Proximate cause requires something in addition to a "but for" causation test because the "but for" causation test serves only to exclude items that are not causal in fact; it will include items that are causal in fact but that would be unreasonable to base liability

upon because they are too far removed from the ultimate injury or damage. . . .

> . . . [T]he injury must be a reasonable and probable consequence of the act or omission of the defendant. This is generally a "look back" test but, to the extent it requires that the injury be "natural and probable," it probably includes a sprinkling of foreseeability. To the extent the damages are surprising, unexpected, or freakish, they may not be the natural and probable consequences of a defendant's actions. If the facts involved an extended scenario involving multiple persons and events with potential intervening causes, then the requirement that the damages that result be the natural and probable consequence of defendant's conduct comes into play and may cut off liability.

Id. at 865 (citations omitted); see, e.g., Ashley v. R.D. Columbia Assocs., 54 F.3d 498, 501 (8th Cir. 1995) (applying Missouri law).

We hold plaintiff could not establish as a matter of law that defendants' conduct in organizing the tournament-- the emphasis on "breakneck" speed and the lack of tournament safety precautions-- actually caused the fatal accident. Even assuming for purposes of analysis that defendants, as the organizers of the tournament, had a duty to protect the public from tournament-related hazards, in particular, the reckless operation of high-speed fishing boats by tournament contestants,[3] and that defendants breached that duty, plaintiff could not establish any causal connection between that breach and the accident under the undisputed facts. Rather, the cause of the accident was Dunlap's conduct, that is, his failure to keep a proper lookout. It was undisputed that Dunlap was not engaged in any tournament-related activity when the accident occurred. Not only did the accident occur on a practice day when defendants had no control over tournament contestants, it was

---

[3]But cf. Archer v. Outboard Marine Corp., 908 S.W.2d 701, 702 (Mo. Ct. App. 1995) (rejecting claim that bass tournaments on public lakes present an unreasonable danger of injury to the public due to reckless operation of high-speed fishing boats).

undisputed that Dunlap had already finished practicing and was returning home at the time the accident occurred. It was also undisputed that, at the time the accident occurred, he was not racing his boat or timing himself and thus was not engaged in a "timing run" to see how long it would take to travel from a fishing spot to the tournament check-in point, which was located several miles away from the accident site.

Accordingly, we affirm the judgment of the district court.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.