COLIN KIEFER, Plaintiff-Appellant, v. RUST-OLEUM CORPORATION *et al.*, Defendants-Appellees.

First District (1st Division)   No. 1—08—2879

Opinion filed August 24, 2009.—Rehearing denied October 14, 2009.

Hegarty & Heath, of Chicago (Terrence K. Hegarty and Timothy W. Heath, of counsel), for appellant.

Wildman, Harrold, Allen & Dixon LLP, of Chicago (Mark L. Durbin and Matthew M. Garrett, of counsel), for appellee Rust-Oleum Corporation.

Pretzel & Stouffer, Chtrd., of Chicago (Robert Marc Chemers, Donald J. O'Meara, David S. Osborne, and Rick P. Kenyon, of counsel), for appellee United States Can Corporation.

PRESIDING JUSTICE ROBERT E. GORDON delivered the opinion of the court:

This is an appeal from an order of the circuit court of Cook County dismissing the instant cause "with prejudice" pursuant to section 2—619(a)(4) of the Code of Civil Procedure (Code) (735 ILCS 5/2—619(a)(4) (West 2006)), as barred by the doctrine of *res judicata*. We affirm for the reasons set forth below.

## BACKGROUND

The only issue raised in this appeal is whether the trial court erred by dismissing the instant lawsuit as barred by the doctrine of *res judicata*. Therefore, we recite only those facts necessary for our consideration of that singular issue.

On November 1, 2000, plaintiff Colin Kiefer, a resident of Penticton, British Columbia, Canada, filed a complaint in the circuit court of Cook County against defendant Rust-Oleum Corporation (Rust-Oleum), an Illinois corporation "headquartered" in Lake County, Illinois, alleging that he suffered personal injuries after a can of aerosol spray paint "assembled and sold" by Rust-Oleum "exploded," striking him in the face and causing severe injuries to his face, head, neck, and left eye. The incident occurred while Kiefer was working for Waycom Manufacturing, Ltd., a Canadian company located in Penticton, British Columbia, Canada. Counts I and II of Kiefer's complaint sounded in strict product liability and negligence, respectively. For purposes of clarity, we will refer to the action filed in 2000 as *Kiefer I* throughout this opinion.

After obtaining leave of court, on May 21, 2001, Kiefer filed an amended complaint in *Kiefer I* naming as an additional defendant United States Can Corporation (U.S. Can), a Delaware corporation "headquartered" in Broomfield, Colorado, the alleged manufacturer of the aerosol spray paint can. The amended complaint asserted two counts, both sounding in strict product liability; count I was asserted against Rust-Oleum, and count II was asserted against U.S. Can. On November 1, 2002, on motion of Rust-Oleum, the trial court entered an order transferring *Kiefer I* to Lake County based upon the doctrine of *forum non conveniens*.

While *Kiefer I* was pending in Lake County, Rust-Oleum moved to dismiss Kiefer's amended complaint under section 2—619(a)(9) of the Code (735 ILCS 5/2—619(a)(9) (West 2006)), claiming that the law of British Columbia, Canada, governed Kiefer's claims because British

Columbia was the location of Kiefer's residence and the situs of the occurrence, and that the law of that jurisdiction "does not recognize the law of strict products liability." *Dorman v. Emerson Electric Co.*, 23 F.3d 1354, 1361 (8th Cir. 1994) (noting that "[t]he Canadian courts have held unequivocally that Canadian law does not make available to plaintiffs a theory of strict products liability"), citing *Meisel v. Tolko Industries, Ltd.*, 105 B.C.J. 162, 169 (B.C. S. Ct. 1991) (unpublished) (quoting *Phillips v. Ford Motor Co. of Canada*, 18 D.L.R. (3d) 641, 657 (Ont. App. 1971) (Schroeder, J.A., concurring) ("Our Courts do not, in product liability cases, impose upon manufacturers, distributors or repairers, as is done in some of the States of the American union, what is virtually strict liability")). U.S. Can joined in Rust-Oleum's section 2—619(a)(9) motion to dismiss (735 ILCS 5/2—619(a)(9) (West 2006)).

After accepting briefing and hearing argument from the parties, the Lake County circuit court announced its ruling at a November 5, 2003, hearing on the section 2—619(a)(9) motion to dismiss. The Lake County trial court found that British Columbia law governed Kiefer's claims and that British Columbia law did not recognize a cause of action based on strict products liability, and the court dismissed Kiefer's amended complaint which, as noted, included two counts both asserting strict product liability claims. The trial judge then inquired whether Kiefer would elect to stand on the dismissed complaint or whether he would file an amended complaint. Kiefer's counsel responded that he would need to discuss the matter with his client before making that decision. The trial court therefore allowed Kiefer until December 3, 2003, to file a second amended complaint. At the hearing, Kiefer's counsel indicated that he understood that the trial court's ruling was final, in that "to some respect, this may be dispositive of the entire case," and indicated that for that reason, he may seek an interlocutory appeal under Illinois Supreme Court Rule 304 (210 Ill. 2d R. 304) or 308 (155 Ill. 2d R. 308). The Lake County trial court memorialized its ruling dismissing Kiefer's strict product liability claims in a written order "for the reasons stated in open court." The November 5, 2003, written order also memorialized the granting of leave to file a second amended complaint by December 3, 2003, and also ordered that a transcript of the November 5, 2003, hearing on the section 2—619(a)(9) motion to dismiss be made part of the record. The written order did not contain the words "with prejudice" or "without prejudice."

Kiefer did file a second amended complaint, and thereafter third and fourth amended complaints, none of which reasserted the strict

product liability claims which the Lake County trial court dismissed on November 5, 2003. Specifically, Kiefer filed a second amended complaint on December 3, 2003, in *Kiefer I*. Counts I and II of Kiefer's second amended complaint asserted negligence claims against Rust-Oleum and U.S. Can, respectively; both counts bore the caption *"res ipsa loquitor."* Kiefer filed a third amended complaint in *Kiefer I* on January 22, 2004, again asserting negligence claims in counts I and II against Rust-Oleum and U.S. Can, respectively; the third amended complaint, however, omitted the *"res ipsa loquitor"* designations. After both Rust-Oleum and U.S. Can moved to strike the counts asserted against them in the third amended complaint for failure to sufficiently plead a cause of action pursuant to section 2—615 of the Code (735 ILCS 5/2—615 (West 2006)), the Lake County trial court entered an order denying U.S. Can's motion to strike count II but granting Rust-Oleum's motion to strike count I of the third amended complaint. The Lake County trial court granted Kiefer leave to file a fourth amended complaint to correct pleading deficiencies related to the negligence claim asserted against Rust-Oleum. Kiefer filed a fourth amended complaint in *Kiefer I* on April 13, 2004; again, counts I and II asserted causes of action for negligence against Rust-Oleum and U.S. Can, respectively. Both Rust-Oleum and U.S. Can answered and asserted affirmative defenses to Kiefer's fourth amended complaint in *Kiefer I*.

A few weeks before trial was set to begin in *Kiefer I*, plaintiff voluntarily dismissed his negligence claims against Rust-Oleum and U.S. Can "without prejudice" pursuant to section 2—1009 of the Code (735 ILCS 5/2—1009 (West 2006)).

On August 28, 2006, Kiefer refiled his negligence claims in the present action against Rust-Oleum and U.S. Can in the circuit court of Cook County. For the sake of consistency, we will refer to the present action as *Kiefer II* throughout this opinion. Count I of Kiefer's complaint in *Kiefer II* was asserted against U.S. Can, and count II was asserted against Rust-Oleum.

Rust-Oleum and U.S. Can filed separate motions to dismiss *Kiefer II* pursuant to section 2—619(a)(4) of the Code (735 ILCS 5/2—619(a)(4) (West 2006)) claiming that Kiefer's claims are barred by the doctrine of *res judicata*. After accepting briefing and hearing argument from the parties, the Cook County trial court granted both defendants' motions and dismissed *Kiefer II* "with prejudice" on September 22, 2008, by applying the Illinois Supreme Court's recent

holding in *Hudson v. City of Chicago*, 228 Ill. 2d 462 (2008). This appeal followed.[1]

## ANALYSIS

The central issue in this case is whether the involuntary dismissal of Kiefer's strict product liability claims and subsequent voluntary dismissal of his negligence claims in *Kiefer I* barred the refiling of his negligence claims in *Kiefer II* under the doctrine of *res judicata.* " 'The doctrine of *res judicata* provides that a final judgment on the merits rendered by a court of competent jurisdiction bars any subsequent actions between the same parties or their privies on the same cause of action.' " *Hudson v. City of Chicago*, 228 Ill. 2d 462, 467 (2008), quoting *Rein v. David A. Noyes & Co.*, 172 Ill. 2d 325, 334 (1996). Three requirements must be satisfied for *res judicata* to apply: (1) a final judgment on the merits has been reached by a court of competent jurisdiction; (2) an identity of cause of action exists; and (3) the parties or their privies are identical in both actions. *Hudson*, 228 Ill. 2d at 467, citing *Downing v. Chicago Transit Authority*, 162 Ill. 2d 70, 73-74 (1994). This court's standard of review from a dismissal pursuant to section 2—619(a)(4) of the Code (735 5/2—619(a)(4) (West 2006)) based upon the doctrine of *res judicata* is *de novo. Morris B. Chapman & Associates v. Kitzman*, 193 Ill. 2d 560, 565 (2000).

Kiefer does not dispute that the second and third requirements for the application of *res judicata* are satisfied here. Focusing on the first requirement, Kiefer contends that the Cook County trial court erred in concluding that the negligence claims in *Kiefer II* were barred by *res judicata* because there was no final adjudication on the merits of his voluntarily dismissed negligence claims in *Kiefer I*. Rust-Oleum and U.S. Can claim that the involuntary dismissal of Kiefer's strict product liability claims in *Kiefer I* was a final adjudication on the merits for purposes of *res judicata* and that *res judicata* bars Kiefer's negligence claims. We agree with Rust-Oleum and U.S. Can as the Illinois Supreme Court spoke decisively to this precise issue in its recent holding in *Hudson v. City of Chicago*, 228 Ill. 2d 462 (2008), where it reaffirmed the principles set forth in *Rein v. David A. Noyes & Co.*, 172 Ill. 2d 325 (1996).

In *Hudson*, the Illinois Supreme Court held that where a plaintiff asserts multiple claims arising from the same set of operative facts in a single action and one of those claims is dismissed on the merits, the doctrine of *res judicata* will bar the plaintiff from refiling not only those claims that were dismissed on the merits as part of the original

---

[1]We note that Kiefer has not filed a reply brief with this court.

action but also any claims that could have been determined as part of that action. *Hudson v. City of Chicago*, 228 Ill. 2d 462, 467 (2008).

In *Hudson*, the parents of a child who died of acute asthma exacerbation filed a two-count wrongful death complaint against the City of Chicago and certain fire department employees alleging that their son died because the city dispatched a fire engine with no advanced life-support equipment in response to a 911 call. *Hudson*, 228 Ill. 2d at 465. The plaintiffs claimed that their son died as a result of a delay in treatment. *Hudson*, 228 Ill. 2d at 465. Count I of the plaintiff's complaint in *Hudson* alleged negligence, and count II alleged willful and wanton misconduct. *Hudson*, 228 Ill. 2d at 465-66. The defendants moved to involuntarily dismiss the plaintiffs' negligence claim pursuant to section 2—619(a)(9) on the grounds that section 3.150 of the Emergency Medical Services (EMS) Systems Act (210 ILCS 50/3.150 (West 2006)) immunized them from claims based on negligence. The trial court granted the defendants' motion to dismiss count I of the plaintiffs' complaint. Two and one-half years later, the plaintiffs moved to voluntarily dismiss their willful and wanton misconduct claims because their lead counsel died on the eve of trial and new counsel required additional time to prepare for trial. *Hudson*, 228 Ill. 2d at 496 (Kilbride, J., dissenting, joined by Fitzgerald, J.). The trial court accordingly granted the plaintiffs' motion to voluntarily dismiss their willful and wanton misconduct claim "without prejudice." *Hudson*, 228 Ill. 2d at 466.

A year later, the plaintiffs refiled their willful and wanton misconduct claim. Defendants moved to dismiss the refiled claim pursuant to section 2—619(a)(4) of the Code (735 ILCS 5/2—619(a)(4) (West 2006)), arguing that the claim was barred by *res judicata*. *Hudson*, 228 Ill. 2d at 466. The trial court agreed with the defendants that the involuntary dismissal of the plaintiffs' negligence claim in the originally filed action constituted an adjudication on the merits and that *res judicata* barred not only matters that were determined in the first action, but also matters that could have been determined in the first action. *Hudson*, 228 Ill. 2d at 466. The trial court accordingly granted the defendants' motion to dismiss the refiled action. *Hudson*, 228 Ill. 2d at 466.

The plaintiffs appealed and this court affirmed, relying on *Rein*, 172 Ill. 2d 325. *Hudson*, 228 Ill. 2d at 466. The Illinois Supreme Court allowed the plaintiffs' petition for leave to appeal (210 Ill. 2d R. 315).

The Illinois Supreme Court held "that the plaintiffs' refiled willful and wanton misconduct claim [was] barred by *res judicata*" and consequently affirmed this court's decision. *Hudson*, 228 Ill. 2d at 467. In reaching its holding, the Illinois Supreme Court noted that the

plaintiffs' negligence claim was dismissed on the merits based on defendants' statutory immunity, and that Illinois Supreme Court Rule 273 provides that " 'an involuntary dismissal of an action, other than a dismissal for lack of jurisdiction, for improper venue, or for failure to join an indispensable party, operates as an adjudication upon the merits.' " *Hudson*, 228 Ill. 2d at 468, quoting 134 Ill. 2d R. 273.

The *Hudson* court then reviewed its decision in *Rein*. *Hudson*, 228 Ill. 2d at 469-76. In *Rein*, the plaintiffs filed an eight-count complaint alleging that the defendants fraudulently misrepresented the character of certain securities that they had sold to plaintiffs. In some of the counts, the plaintiff sought the remedy of rescission of the purchase pursuant to section 13 of the Illinois Securities Law of 1953 (Ill. Rev. Stat. 1989, ch. 121½, par. 137.13(A)(1)). In other counts, the plaintiffs alleged common law fraud and breach of fiduciary duty. The trial court dismissed three counts seeking rescission on statute of limitations grounds. The trial court denied the plaintiff's request for an Illinois Supreme Court Rule 304(a) finding (155 Ill. 2d R. 304(a)) that there was no just reason to delay enforcement or appeal of the dismissed counts. The plaintiffs then voluntarily dismissed the remaining counts of their complaint pursuant to section 2—1009 of the Code (735 ILCS 5/2—1009 (West 2006)). The plaintiffs then appealed the dismissal of the involuntarily dismissed counts, and the appellate court affirmed. See *Rein*, 172 Ill. 2d at 328-30.

After voluntarily dismissing their remaining counts and appealing the dismissal of their involuntarily dismissed counts, the plaintiffs re-filed their entire case in a complaint that was "virtually identical" to their originally filed complaint. *Rein*, 172 Ill. 2d at 331. The trial court dismissed the plaintiffs' refiled complaint based on the doctrine of *res judicata*. The appellate court affirmed the dismissal. *Rein*, 172 Ill. 2d at 327.

On review, the Illinois Supreme Court affirmed. *Rein*, 172 Ill. 2d at 336. Our supreme court first held that the involuntarily dismissed counts were clearly barred by *res judicata*, as those counts had been dismissed as barred by the statute of limitations and the dismissal was upheld on appeal. *Rein*, 172 Ill. 2d at 334-36. The court then addressed the plaintiff's voluntarily dismissed counts. The court found that all three requirements for the application of *res judicata*, namely (1) a final judgment on the merits rendered by a court of competent jurisdiction, (2) identity of cause of action, and (3) identity of parties or their privies, were satisfied. *Rein*, 172 Ill. 2d at 338-39. With respect to whether there was an adjudication on the merits of the voluntarily dismissed counts, the *Rein* court held as follows:

"The first element of *res judicata* is met here because the dismissal of the rescission counts with prejudice in *Rein I* operates as an adjudication on the merits for purposes of *res judicata* \*\*\*. Although there was not an adjudication on the merits of the common law counts in *Rein I*, the concept of *res judicata* is broader than plaintiffs suggest. If the three elements necessary to invoke *res judicata* are present, *res judicata* will bar not only every matter that was actually determined in the first suit, but also every matter that might have been raised and determined in that suit. [Citation.] Therefore, if the three requirements of *res judicata* are met and the common law counts could have been determined in *Rein I*, plaintiffs will be barred from litigating the common law counts in *Rein II*.

\* \* \*

Because the common law counts arise out of the same set of operative facts as the rescission counts, plaintiffs could have litigated and resolved these claims in *Rein I*. Having failed to do so, plaintiffs are barred by the doctrine of *res judicata* from attempting to raise and litigate them in *Rein II*, even though there was no adjudication on the merits of these claims in the prior suit. [Citation.]" *Rein*, 172 Ill. 2d at 337-39.

After holding that the voluntarily dismissed counts were barred by *res judicata*, our supreme court next discussed the public policy against claim-splitting. *Rein*, 172 Ill. 2d at 339-42. The court explained that the principle of *res judicata* prohibits a party from seeking relief on the basis of issues that could have been resolved in a previous action, which serves to prevent parties from splitting their claims into multiple actions. *Rein*, 172 Ill. 2d at 339-42. The court then adopted the exceptions to the prohibition of claim-splitting set forth in section 26(1) of the Restatement (Second) of Judgments (1982). Under the Restatement, the rule against claim-splitting would not bar a second action if:

"(1) the parties have agreed in terms or in effect that plaintiff may split his claim or the defendant has acquiesced therein; (2) the court in the first action expressly reserved the plaintiff's right to maintain the second action; (3) the plaintiff was unable to obtain relief on his claim because of a restriction on the subject-matter jurisdiction of the court in the first action; (4) the judgment in the first action was plainly inconsistent with the equitable implementation of a statutory scheme; (5) the case involves a continuing or recurrent wrong; or (6) it is clearly and convincingly shown that policies favoring preclusion of a second action are overcome for an

extraordinary reason." *Rein*, 172 Ill. 2d at 341, citing Restatement (Second) of Judgments §26(1) (1982).[2]

The supreme court found that none of the exceptions applied. *Rein*, 172 Ill. 2d at 341-42. The court then addressed the plaintiffs' argument that section 2—1009 of the Code gave them an absolute right to refile the voluntarily dismissed counts within one year. The *Rein* court acknowledged the plaintiffs' right under section 2—1009 of the Code, but held that legislatively created rights did not automatically immunize the plaintiffs against the application of *res judicata* or any other legitimate defenses that a defendant might assert. *Rein*, 172 Ill. 2d at 342-43. The supreme court noted two public policy reasons for its holding. First, its holding would prevent a party from filing an action with multiple claims, dismissing several of the counts, obtaining a final judgment on the undismissed counts and, if unsuccessful on the counts not dismissed, refiling the previously dismissed counts. Second, the holding would prohibit plaintiffs from using voluntary dismissals to circumvent a trial court's refusal of an Illinois Supreme Court Rule 304(a) certification. *Rein*, 172 Ill. 2d at 343.

After reviewing its holding in *Rein*, the Illinois Supreme Court in *Hudson* held that the plaintiffs' voluntarily dismissed negligence claim was barred by the doctrine of *res judicata*. *Hudson*, 228 Ill. 2d at 473-74. The supreme court noted that *Rein* stands for the proposition that a plaintiff who splits his claims by voluntarily dismissing and refiling part of an action after a final judgment has been entered on another part of the case subjects himself to a *res judicata* defense. *Hudson*, 228 Ill. 2d at 476.

Applying the holdings of *Hudson* and *Rein* to the facts in the case at bar, the conclusion that Kiefer's negligence claims in *Kiefer II* are barred by *res judicata* becomes manifest.

As noted, "[t]hree requirements must be satisfied for *res judicata* to apply: (1) a final judgment on the merits has been rendered by a court of competent jurisdiction; (2) an identity of cause of action exists; and (3) the parties or their privies are identical in both actions." *Hudson*, 228 Ill. 2d at 467. As noted, Kiefer does not dispute that the second and third requirements are satisfied here. Rather, Kiefer argues that the November 5, 2003, order dismissing his strict product liability claims in *Kiefer I* was not a "final" order because it granted him

---

[2]Kiefer has not argued, in the trial court or on appeal, that any of the exceptions to the rule against claim-splitting are applicable here. Arguments not raised in the trial court or argued in appellant's brief on appeal are waived. *Johnson Press of America, Inc. v. Northern Insurance Co. of New York*, 339 Ill. App. 3d 864, 874 (2003); 210 Ill. 2d R. 341(h)(7).

"leave to amend" and did not contain the words "with prejudice." Both of Kiefer's observations regarding the November 5, 2003, order may be true; however, they are far from dispositive regarding the effect of the order.

The orders of the trial court must be interpreted from the entire context in which they were entered, with reference to other parts of the record including the pleadings, motions and issues before the court and the arguments of counsel. *Dewan v. Ford Motor Co.*, 343 Ill. App. 3d 1062, 1069 (2003); *P&A Floor Co. v. Burch*, 289 Ill. App. 3d 81, 88 (1997). Orders must be construed in a reasonable manner so as to give effect to the apparent intention of the trial court. *Dewan*, 343 Ill. App. 3d at 1069; *P&A Floor Co.*, 289 Ill. App. 3d at 88-89. "[T]he effect of a dismissal order is determined by its substance and not by the incantation of any particular magic words," and therefore, a trial court's description of a final judgment as being "without prejudice" or "with prejudice" is not determinative. *Schal Bovis, Inc. v. Casualty Insurance Co.*, 314 Ill. App. 3d 562, 568 (1999).

Where, as here, a dismissal order does not explicitly state that it is entered "with prejudice" or "without prejudice," it is necessary "to look to the substance of what was actually decided by the dismissal order" to determine if the order is final. *McMann v. Pucinski*, 218 Ill. App. 3d 101, 106 (1991). Here, there can be no dispute that Kiefer's strict liability claims were adjudicated on its merits. Kiefer's first amended complaint in *Kiefer I* asserted claims for strict product liability against both Rust-Oleum and U.S. Can. Rust-Oleum moved, and U.S. Can joined Rust-Oleum's motion, to dismiss Kiefer's strict product liability claims on the grounds that British Columbian law governed Kiefer's claims and that British Columbia did not recognize a cause of action based on strict products liability. After accepting briefing and hearing argument from the parties, the Lake County trial court in *Kiefer I* found that British Columbian law governed Kiefer's claims and that British Columbia does not recognize a cause of action for strict product liability. See *Dorman*, 23 F.3d at 1361. Accordingly, the Lake County trial court granted defendants' motion to dismiss and involuntarily dismissed Kiefer's strict liability claims pursuant to section 2—619(a)(9) of the Code (735 ILCS 5/2—619(a)(9) (West 2006)).

The involuntary dismissal was not based upon lack of jurisdiction, improper venue, or the failure to join an indispensable party. See 134 Ill. 2d R. 273. Nor was the involuntary dismissal based upon a pleading deficiency pursuant to section 2—615 of the Code (735 ILCS 5/2—615 (West 2006)) that could be cured in an amended complaint. Rather, it was based on the Lake County trial court's determination that

Kiefer could not plead any set of facts that would allow him to recover under a theory of strict product liability.

A review of the transcript from the November 5, 2003, hearing on the motion to dismiss Kiefer's amended complaint in *Kiefer I* demonstrates that the reference to "leave to amend" in the written order was not intended to allow Kiefer to amend his involuntarily dismissed strict product liability claims. Rather, leave to amend was granted to allow Kiefer to assert negligence claims, which he did in his second, third, and fourth amended complaints. As noted, after dismissing Kiefer's strict liability claims, the trial judge inquired whether Kiefer would elect to stand on the dismissed complaint or whether he would file an amended complaint. Kiefer's counsel responded that he would need to discuss the matter with his client before making that decision. As a result, the trial court granted Kiefer 21 days to file a second amended complaint.

Based upon the foregoing, it is apparent that the November 5, 2003, order dismissing Kiefer's strict product liability claims in *Kiefer I* was a final order since the Lake County trial court dismissed the claims based on its finding that Kiefer could not plead any set of facts that would allow him to recover on his strict product liability claims. The transcript from the November 5, 2003, hearing demonstrates that Kiefer's counsel understood that the order was final when he indicated that he may seek an interlocutory appeal because "to some respect, the [order] may be dispositive of the entire case." The inclusion of the words "leave to amend" and the absence of the words "with prejudice" from the November 5, 2003, order does not affect the finality of the order with regard to Kiefer's strict product liability claims as the substance of the order shows that the order was determinative of those claims.

As in *Hudson*, once the section 2—1009 voluntary dismissal was entered, the November 5, 2003, final order dismissing Kiefer's strict product liability claims became immediately appealable. *Hudson*, 228 Ill. 2d at 468 (finding that when the plaintiffs voluntarily dismissed their lawsuit, it "terminated in its entirety and all final orders became immediately appealable"), citing *Dubina v. Mesirow Realty Development, Inc.*, 178 Ill. 2d 496, 503 (1997). The *res judicata* effect of the November 5, 2003, order, having never been appealed, extends to "bar not only every matter that was actually determined in the first suit, but also every matter that might have been raised and determined in that suit." *Hudson*, 228 Ill. 2d at 471. Negligence is a matter that Kiefer "could have raised" and, in fact, did raise, in *Kiefer I*. Accordingly, the trial court in the instant matter (*Kiefer II*) correctly determined that Kiefer's negligence claims against Rust-Oleum and U.S. Can were barred by the doctrine of *res judicata*.

Kiefer attempts to take this case out of the clear holding of *Hudson* by citing, and likening the facts of this case, to two recent Illinois Appellate Court decisions, *Piagentini v. Ford Motor Co.*, 387 Ill. App. 3d 887 (2009), and *Jackson v. Victory Memorial Hospital*, 387 Ill. App. 3d 342 (2008). Kiefer claims that in both the *Piagentini* and *Jackson* cases the appellate court was presented with circumstances similar to this case and, distinguishing *Hudson*, the appellate court found that the doctrine of *res judicata* was improperly applied to bar the plaintiffs' refiled actions after a section 2—1009 voluntary dismissal. Neither case supports Kiefer's argument.

In *Piagentini*, the plaintiffs were injured in an automobile accident and filed suit against the manufacturer of their motor vehicle. *Piagentini v. Ford Motor Co.*, 387 Ill. App. 3d 887, 888 (2009). The plaintiffs' complaint included separate counts asserting negligence and strict liability. *Piagentini*, 387 Ill. App. 3d at 888-89. Both claims were supported by factual allegations regarding defective seatbelts and stability and rollover defects. *Piagentini*, 387 Ill. App. 3d at 888-89. After the plaintiffs failed to disclose any expert witness testimony substantiating the allegations regarding the stability and rollover defects, the trial court entered an agreed order for partial summary judgment related to those allegations. *Piagentini*, 387 Ill. App. 3d at 889. The trial court dismissed the plaintiffs' complaint and granted the plaintiffs leave to replead both their strict liability and negligence claims, so long as they did not include any allegations related to stability and rollover defects. *Piagentini*, 387 Ill. App. 3d at 889. Plaintiffs then filed a second amended complaint omitting the allegations pertaining to vehicle stability and rollover defects that were the subject of the partial summary judgment. *Piagentini*, 387 Ill. App. 3d at 889. Plaintiffs later voluntarily dismissed their remaining claims pursuant to section 2—1009 of the Code (735 ILCS 5/2—1009 (West 2006)).

Within one year of the voluntary dismissal, the plaintiffs refiled their claims. *Piagentini*, 387 Ill. App. 3d at 889. The defendant moved for summary judgment claiming that the partial summary judgment order regarding the stability and rollover defects that was entered in the originally filed lawsuit gave rise to *res judicata* that barred the plaintiffs' refiled suit. *Piagentini*, 387 Ill. App. 3d at 889-90. The trial court granted defendant's motion. *Piagentini*, 387 Ill. App. 3d at 890.

On appeal, this court reversed, finding that the agreed order granting partial summary judgment in the originally filed lawsuit was not a final order because "partial summary judgment was granted as to certain allegations within separate counts of the complaint but no actual count was dismissed." *Piagentini*, 387 Ill. App. 3d at 893. Distinguishing *Hudson* this court explained that the partial summary

judgment in the originally filed action was not a final order because "the dismissal of certain allegations under a single theory of recovery does not terminate litigation between the parties on the merits or dispose of the rights of the parties on a separate branch of the controversy." *Piagentini*, 387 Ill. App. 3d at 894. To the contrary, "the dismissal of certain allegations under one theory of recovery merely determines which allegations under that theory are allowed to remain." *Piagentini*, 387 Ill. App. 3d at 894.

*Piagentini* is distinguishable from the case at bar. The November 5, 2003, dismissal order in *Kiefer I* did not merely dismiss certain allegations within Kiefer's claims for recovery but rather the entirety of Kiefer's claims of strict product liability. The November 5, 2003, order did not terminate the litigation between the parties, as it permitted Kiefer to amend his complaint to allege negligence, but did dispose of the rights of the parties with regard to Kiefer's claims of strict product liability. Accordingly, unlike the order entering partial summary judgment in *Piagentini*, the November 5, 2003, order in *Kiefer I* was a final order. See *Hull v. City of Chicago*, 165 Ill. App. 3d 732, 733 (1987) (a final order is one that "either terminates the litigation between the parties on the merits or disposes of the rights of the parties, either on the entire controversy or a separate branch thereof").

*Jackson* is similarly distinguishable from the case at bar. In *Jackson*, a *pro se* plaintiff filed a medical malpractice action against a hospital. The hospital moved to dismiss the plaintiff's complaint for failure to state a claim upon which relief could be granted pursuant to section 2—615 of the Code (735 ILCS 5/2—615 (West 2006)), and also for failure to attach a physician's affidavit of merit to her complaint as required by section 2—622 of the Code (735 ILCS 5/2—622 (West 2006)). The trial court granted the hospital's motion to dismiss and granted the plaintiff leave to file an amended complaint. *Jackson v. Victory Memorial Hospital*, 387 Ill. App. 3d 342, 343 (2008). Thereafter, the trial court set and extended several deadlines for the plaintiff to file her amended complaint. The plaintiff failed to meet those deadlines because she was unable to obtain counsel to prepare an amended complaint. *Jackson*, 387 Ill. App. 3d at 344. The plaintiff subsequently moved to voluntarily dismiss her suit pursuant to section 2—1009 of the Code (735 ILCS 5/2—1009 (West 2006)) without having filed an amended complaint. *Jackson*, 387 Ill. App. 3d at 344.

Within one year, the plaintiff refiled suit, and the hospital moved to dismiss pursuant to section 2—619(a)(4) of the Code (735 ILCS 5/2—619(a)(4) (West 2006)), based upon the doctrine of *res judicata*, arguing that the involuntary dismissal of her claims in the original suit qualified as a final adjudication of those claims on the merits that

prevented her from pursuing the same claims in a subsequent suit. *Jackson*, 387 Ill. App. 3d at 344-45. The trial court granted the hospital's motion to dismiss. *Jackson*, 387 Ill. App. 3d at 345.

On appeal, the appellate court considered whether the involuntary dismissal order qualified as a final order that could satisfy the first element for the application of *res judicata*. *Jackson*, 387 Ill. App. 3d at 351-52. The appellate court held that the involuntary dismissal order did not qualify as such because the plaintiff was granted leave to file an amended complaint and no other substantive action was taken prior to the voluntary dismissal of her suit. The defendant argued that the plaintiff's failure to plead within the allotted time constituted an election to stand on the dismissed complaint. *Jackson*, 387 Ill. App. 3d at 351-52. The court rejected defendant's argument and found that there was no indication that the plaintiff had elected to stand on her complaint and the mere failure to file an amended complaint within the allotted time did not transform the nonfinal dismissal order into a final order. *Jackson*, 387 Ill. App. 3d at 352.

*Jackson* recognizes that where a plaintiff has been granted leave to file an amended complaint but has not yet filed an amended complaint, he retains the ability to voluntarily dismiss his suit without reaching a final judgment on the merits of those claims for purposes of *res judicata*. *Jackson*, 387 Ill. App. 3d at 352.

It does not follow, however, that *res judicata* can be avoided where a plaintiff has elected to split his claims by filing an amended complaint and abandons the claims that were the subject of the dismissal order in favor of different claims based on a different theory of liability. As noted above, this is precisely the type of claim-splitting that *Hudson* and *Rein* seek to prohibit.

## CONCLUSION

For the foregoing reasons, we affirm the judgment of the circuit court of Cook County. The November 5, 2003, order dismissing Kiefer's strict product liability claims in *Kiefer I* was a final order for purposes of *res judicata*. Upon Kiefer's voluntary dismissal of *Kiefer I*, the November 5, 2003, final order became immediately appealable. Because Kiefer's strict liability claims were determined on the merits in *Kiefer I*, he cannot assert negligence claims arising out of the same set of operative facts in the instant case (*Kiefer II*).

Affirmed.

HALL and GARCIA, JJ., concur.