# Illinois Official Reports

## Supreme Court

## *Ward v. Decatur Memorial Hospital*, 2019 IL 123937

| | |
|---|---|
| Caption in Supreme Court: | GERALD R. WARD, Appellee, v. DECATUR MEMORIAL HOSPITAL, Appellant. |
| Docket No. | 123937 |
| Filed | June 20, 2019 |
| Decision Under Review | Appeal from the Appellate Court for the Fourth District; heard in that court on appeal from the Circuit Court of Macon County, the Hon. Thomas E. Little, Judge, presiding. |
| Judgment | Appellate court judgment affirmed.<br>Circuit court judgment reversed.<br>Cause remanded. |
| Counsel on Appeal | Michael J. Kehart, James E. Peckert, and Regan M. Lewis, of Kehart, Peckert, Wise, Toth & Lewis, of Decatur, for appellant.<br><br>Randall A. Wolter, of Wolter, Beeman, Lynch & Londrigan, LLP, of Springfield, for appellee.<br><br>Stephen Phalen, of Law Offices of Stephen S. Phalen LLC, of Chicago, for *amicus curiae* Illinois Trial Lawyers Association. |

Justices       JUSTICE THEIS delivered the judgment of the court, with opinion.

Justices Kilbride, Garman, and Burke concurred in the judgment and opinion.

Chief Justice Karmeier specially concurred, with opinion, joined by Justices Thomas and Neville.

## OPINION

¶ 1   The primary issue in this appeal is whether *res judicata* bars plaintiff Gerald R. Ward's refiled action because he voluntarily dismissed the third amended complaint after the Macon County circuit court had involuntarily dismissed several counts from the original, first, and second amended complaints in the initial action. *Richter v. Prairie Farms Dairy, Inc.*, 2016 IL 119518, controls the outcome of this case; therefore, we affirm the judgment of the appellate court, reversing the grant of summary judgment in favor of defendant Decatur Memorial Hospital (Hospital).

¶ 2              BACKGROUND

¶ 3   The underlying claims involve alleged medical malpractice sustained by the decedent (Ward's brother) at the Hospital. In mid-December 2007, the decedent had gastric bypass surgery at the Hospital. According to Ward, shortly thereafter, the decedent developed a bed sore that became infected. The Hospital discharged him four days after the procedure. In January 2008, the decedent died from complications associated with a bacterial infection.

¶ 4          The Initial Complaint

¶ 5   In December 2009, Ward filed his initial nine-count complaint (No. 09 L 209). He named the Hospital, "Decatur Memorial Hospital Home Health Services," and unknown employees of the Hospital as defendants. In count I, on behalf of the decedent's estate, Ward alleged that the Hospital breached its duty of care to the decedent by, among other things, failing to diagnose or to treat the bed sore that developed during his stay. In count II, in his individual capacity, Ward raised a wrongful death claim against the Hospital. In count III, in his individual capacity, Ward claimed that the Hospital should reimburse him for the decedent's medical bills and funeral expenses under the "Family Expense Act."

¶ 6   In count IV, on behalf of the estate, Ward alleged that Decatur Memorial Hospital Home Health Services breached its duty of care to the decedent. In count V, in his individual capacity, Ward raised a wrongful death claim against Decatur Memorial Hospital Home Health Services. In count VI, in his individual capacity, Ward claimed that he was entitled to family expenses from Decatur Memorial Hospital Home Health Services.

¶ 7   In count VII, on behalf of the estate, Ward claimed that unknown employees breached their duty of care to the decedent. In count VIII, in his individual capacity, Ward raised a wrongful death claim against unknown employees. In count IX, in his individual capacity, Ward claimed that he was entitled to family expenses from unknown employees.

¶ 8    In May 2010, the Hospital filed a combined motion to dismiss the complaint. The Hospital moved to dismiss counts I, II, IV, and paragraph 4(d) of counts IV through VI under section 2-615 of the Code of Civil Procedure (Code) (735 ILCS 5/2-615 (West 2010)) for failure to allege sufficient facts to state a cause of action. In those counts, Ward alleged that the Hospital's nurses failed to diagnose the decedent's pressure sore. Because nurses cannot make medical diagnoses, the Hospital asked the trial court to strike the counts.

¶ 9    The Hospital also noted that, under section 2-622(g) of the Code, plaintiff's failure "to file an affidavit and report in compliance with this [s]ection shall be grounds for dismissal under [s]ection 2-619." *Id.* § 2-622(g). Arguing that Ward's report failed to satisfy the statutory requirements, the Hospital moved to dismiss the entire complaint. It further observed that Ward had not been appointed special administrator for the decedent's estate; therefore, it moved to dismiss counts I, II, IV, V, VI, and VII. Additionally, the Hospital noted that, although the complaint referenced the "Family Expense Act," Ward likely meant the "Rights of Married Persons Act," which did not allow a sibling to recover for another sibling's medical expenses. As such, the Hospital asked the court to dismiss counts III, VI, and IX of the complaint. Finally, because Ward lacked jurisdiction to sue unknown persons, the Hospital argued that counts III, VI, and IX also should be dismissed.

¶ 10    In July 2010, the trial court ruled on the Hospital's motion to dismiss the complaint. Because no court had appointed Ward as administrator for the decedent's estate, the trial court dismissed counts I and IV without prejudice. Ward conceded that his reliance on the Family Expense Act was misplaced, and the court determined that he alleged no facts to establish the Hospital's legal responsibility to pay the decedent's medical and funeral expenses. Accordingly, the court dismissed counts III and VI without prejudice.

¶ 11    The trial court observed that, in the report Ward filed under section 2-622 of the Code (*id.* § 2-622(a)(1) (requiring review of the cause of action by a qualified health professional)), the health care professional did not identify his reasons for determining that a meritorious cause of action existed. It therefore dismissed count II without prejudice. Finally, noting that section 2-413 of the Code (*id.* § 2-413) did not authorize naming unknown employees as defendants, the court ruled that counts VII, VIII, and IX were "properly stricken." The court granted Ward leave to file an amended complaint, affidavit, and report within 28 days.

¶ 12                    The First Amended Complaint

¶ 13    In August 2010, Ward filed a first amended complaint. In count I, on behalf of the decedent's estate, Ward alleged that the Hospital, its agents, and its employees breached their duty to treat and to care for the decedent in accordance with reasonable and proper hospital practices. In count II, in his individual capacity, Ward raised a wrongful death claim against the Hospital. In count III, on behalf of the estate, Ward alleged that Decatur Memorial Hospital Home Health Services, its agents, and its employees breached their duty to treat and to care for the decedent in accordance with reasonable and proper home health care practices. Finally, in count IV, in his individual capacity, Ward raised a wrongful death claim against Decatur Memorial Hospital Home Health Services.

¶ 14    The Hospital filed a combined motion to dismiss the first amended complaint. It moved to dismiss counts I and III on the ground that Ward had not obtained leave of court before refiling them. The Hospital then noted that counts II and IV, which "purport[ed] to sound in wrongful

death," were brought by Ward in his individual capacity. But it argued that recovery under the Wrongful Death Act (740 ILCS 180/0.01 *et seq.* (West 2010)) was limited to the decedent's personal representative; Ward could not recover in his individual capacity.

¶ 15   The Hospital moved to dismiss counts III and IV on the ground that "Decatur Memorial Hospital Home Health Services" did not exist and, thus, could not be sued. Further, the Hospital moved to dismiss the first amended complaint in its entirety, contending that "the specific allegations of negligent acts consist of nothing but legal or factual conclusions." It also moved to dismiss counts I and II of the complaint, arguing that the counts did not "state the standard of care applicable to the various persons for whom [the Hospital] is sought to be held liable." Finally, the Hospital moved to dismiss the first amended complaint in its entirety, arguing that the report from Ward's health care professional failed to support his allegations that the Hospital breached any duty of care.

¶ 16   The trial court granted dismissal of count I without prejudice, concluding that the report from Ward's doctor lacked the necessary detail to support his allegations. Because count II was brought in Ward's individual capacity, rather than as a representative of the decedent, the court dismissed it without prejudice. As to counts III and IV, Decatur Memorial Hospital Home Health Services did not exist; therefore, the parties agreed that those counts should be dismissed. The court granted Ward leave to file a second amended complaint within 30 days.

¶ 17                    The Second Amended Complaint

¶ 18   In November 2010, Ward filed his second amended complaint. In count I, on behalf of the decedent's estate, Ward raised a survival claim under a theory of *respondeat superior* against the Hospital. This count alleged that the Hospital "through its agents and/or employees" breached its duty of care to the decedent by, among other things, failing to properly visually assess the patient, failing to identify the skin breakdown, and failing to treat his ulcer to control the infection. Ward further alleged that physicians breached their duty to treat and to administer care to the decedent "in accordance with reasonable and proper surgical practice." Count II was a wrongful death claim under a theory of *respondeat superior* based on the same allegations as in count I.

¶ 19   In count III, Ward raised an institutional negligence/survival claim against the Hospital on behalf of the estate. Ward alleged that the Hospital breached its duty of care to the decedent by, among other things, failing to have adequately trained nurses, failing to require the nurses to consult with certain members of the surgical staff, and breaching the state's license requirements. Count IV was a claim for institutional negligence/wrongful death against the Hospital based on the same allegations as in count III.

¶ 20   The Hospital filed a combined motion to dismiss the second amended complaint. It moved to dismiss counts I and II, arguing that Ward failed to allege sufficient facts to state a cause of action on the theory of *respondeat superior*. According to the Hospital, it was "still unclear as to 'who did what,' and what the proper standard of care [was] as to the various agents and employees." The Hospital also moved to dismiss counts III and IV, arguing that Ward's claim for institutional negligence was vague and conclusory. It further moved to dismiss the entire complaint pursuant to section 2-622(g) of the Code. According to the Hospital, Ward's physician's report was conclusory as to the negligence claim and failed to provide reasons for his belief that a meritorious cause of action for institutional negligence existed.

¶ 21 At a hearing on its motion to dismiss, the Hospital noted that unlike the original and amended complaints—which focused on alleged missteps by nurses—in the second amended complaint, Ward also alleged that physicians had breached the standard of care. The Hospital argued that the accompanying physician's report contained no facts suggesting that a doctor breached any duty of care to the decedent. In both his response to the Hospital's motion to dismiss and at the hearing, Ward acknowledged that his lawsuit was based on alleged breaches in the standard of care by nurses, not by doctors. Given that admission, the Hospital argued that the complaint should not contain allegations directed at physicians.[1]

¶ 22 The trial court ruled that the second amended complaint lacked "a factual basis to support claims premised on a breach of the physician standard of care." It therefore struck the allegations directed at physicians. With those allegations removed, the court determined that Ward's section 2-622 report satisfied the statutory requirements as to the first two counts of the complaint. But the court concluded that the counts alleging institutional negligence were vague, unsupported by substantial allegations of fact, and unsupported by a report from a reviewing health professional as required by section 2-622. Consequently, the court dismissed the second amended complaint. It granted Ward leave to file, within 28 days, a third amended complaint "consistent with [the] court's order, along with a report by a reviewing health professional in support of the institutional negligence counts."

¶ 23 The Third Amended Complaint

¶ 24 In May 2011, Ward filed his third amended complaint. Count I was a survival claim against the Hospital under a theory of *respondeat superior*, based on its nurses' alleged breaches of their duty to act "in accordance with reasonable and proper nursing practice in light of the standard of care of nursing practice then prevailing in the community." Count II was a wrongful death claim against the Hospital under a theory of *respondeat superior*, also based on alleged breaches by nurses. The following month, the Hospital filed its answer and affirmative defenses to the third amended complaint.

¶ 25 Four years later, in early December 2015, the judge issued a pretrial conference order. Among other things, the court ordered the parties to submit a jointly prepared statement of the case and a jointly prepared list of witnesses. The jury trial was set for January 19, 2016. On December 31, 2015, the Hospital moved to bar Ward's disclosure of a rebuttal witness. It argued that it first learned of Ward's proposed rebuttal expert the day before, which was only 20 days before the start of trial. Noting that the case had been pending for six years, the Hospital insisted that Ward had had "ample time to obtain experts."

¶ 26 On January 4, 2016, Ward moved for leave to file a fourth amended complaint. The proposed fourth amended complaint contained two counts. Count I was a survival claim against the Hospital under a theory of *respondeat superior*; count II was a wrongful death claim against the Hospital under a theory of *respondeat superior*. According to Ward, he sought to amend the complaint "to more correctly and succinctly describe the alleged negligence of [d]efendant's nurses as a result of facts developed through discovery."

[1]By the time of the hearing on defendant's motion to dismiss the second amended complaint, Ward had been appointed administrator of the decedent's estate. He therefore had capacity to sue on its behalf.

¶ 27   On January 5, 2016, the trial court issued an order on the pending motions. It noted that Ward had filed his initial complaint in December 2009. "[W]hen a case is this old," the court observed, "the lawyers, the [c]ourt, and the judicial system become one of the issues." Because trial was set to begin in roughly two weeks, the court granted the Hospital's motion to bar the proposed rebuttal witness. The court also denied Ward's motion for leave to amend his complaint, finding that the allegations in the third amended complaint were substantially different from those in the proposed fourth amended complaint.

¶ 28   On January 11, 2016, pursuant to section 2-1009 of the Code (735 ILCS 5/2-1009 (West 2016)), Ward moved to voluntarily dismiss the action. The trial court granted the motion the same day and dismissed the case without prejudice.

¶ 29                               The Refiled Action

¶ 30   On May 6, 2016, Ward initiated another lawsuit against the Hospital (No. 16 L 51). The complaint in the second case was nearly identical to the proposed fourth amended complaint that the trial court disallowed in the prior action. Count I was a survival claim against the Hospital under a theory of *respondeat superior*, and count II was a wrongful death claim against the Hospital under a theory of *respondeat superior*. A different trial judge was assigned to the refiled action.

¶ 31   Months later, the Hospital moved to limit Ward's disclosure of witnesses and opinions. After recounting the history of the case, the Hospital observed that Ward was attempting to disclose witnesses that had been barred from testifying in the prior action. It stressed that, under Illinois Supreme Court Rule 219(e) (eff. July 1, 2002), "[a] party shall not be permitted to avoid compliance with discovery deadlines, orders or applicable rules by voluntarily dismissing the lawsuit." The Hospital asked the trial court to enter an order prohibiting all witnesses who were barred from testifying in the prior case, and it asked the court to limit other witnesses to the opinions they testified to in the initial action.

¶ 32   The trial court, in part, granted the Hospital's motion. The court noted that, although the Hospital blamed Ward for failing to comply with discovery deadlines in the initial action, "it appears that *** both parties were not following the deadlines set forth" in the earlier case. The court ultimately denied the Hospital's motion to bar two witnesses but granted its other requests.

¶ 33   The Hospital then moved for summary judgment. It noted that "[t]he principle that *res judicata* prohibits a party from later seeking relief on the basis of issues which might have been raised in the prior action also prevents a litigant from splitting a single cause of action into more than one proceeding." It observed that the trial court had dismissed "numerous counts of various iterations" of Ward's complaint in the prior action and that he elected not to replead the counts. In the Hospital's view, those dismissals constituted final adjudications on the merits, such that it was entitled to summary judgment on the basis of *res judicata*.

¶ 34   In response, Ward argued that medical negligence was the sole cause of action in his original and subsequently amended complaints. Ward asserted that the amended complaints simply "focused on identifying the proper parties and proper measure of damages." Insisting that no claim-splitting took place and that no final judgment had been entered in the first action, Ward asked the court to deny the Hospital's motion for summary judgment.

¶ 35    The trial court conducted a hearing on the summary judgment motion. The Hospital argued that various claims from Ward's complaints had been dismissed because of legal impediments. In particular, the Hospital contended that institutional negligence was a different cause of action from medical negligence; therefore, the dismissal of the institutional negligence claim counted for *res judicata* purposes.

¶ 36    For his part, Ward argued that "the reason we're here today is because shortly before trial [the judge] entered the order that we could not call a witness *** , told us we couldn't bring a rebuttal witness, and refused to allow us to amend the complaint." In Ward's view, his options "at that time were to go ahead and go through the time and expense of litigation knowing that we would appeal or simply dismiss the case without prejudice." Ward noted that he had an absolute right to refile, and he contended that neither *res judicata* nor the rule against claim-splitting barred his refiled action.

¶ 37    The trial court denied the Hospital's motion for summary judgment. The court noted that the third amended complaint remained pending at the time of Ward's voluntary dismissal. Accordingly, it concluded that "the litigation had not been terminated and the court had not yet fixed the parties' rights." The court ruled that there had been no final judgment and, thus, *res judicata* did not bar the refiled action.

¶ 38    Two days later, the Hospital moved the trial court to reconsider its decision. It argued that the court had not taken into account "the *res judicata* effect of various involuntary dismissals" in Ward's initial lawsuit. Relying on *Hudson v. City of Chicago*, 228 Ill. 2d 462 (2008), and *Rein v. David A. Noyes & Co.*, 172 Ill. 2d 325 (1996), the Hospital claimed that when "plaintiff voluntarily dismissed his suit, the final decisions with respect to the previously filed complaints, and not the third amended complaint, subjected plaintiff to the *res judicata* defense." Ward opposed the motion.

¶ 39    The trial court conducted a hearing on the Hospital's motion to reconsider. Days later, the court reversed course and concluded that *res judicata* barred Ward's second action. Ward moved the trial court to reconsider its grant of summary judgment, arguing that it had overlooked *Richter*, 2016 IL 119518, and *Wilson v. Edward Hospital*, 2012 IL 112898. The court denied his motion.

¶ 40    On appeal, the court reversed the grant of summary judgment in the Hospital's favor. The appellate court determined that, "by granting the plaintiff permission to file an amended complaint, the trial court vacates the designation of 'with prejudice' in its dismissal of individual counts of the original complaint." 2018 IL App (4th) 170573, ¶ 51. It acknowledged that Ward had abandoned several involuntarily dismissed counts from his prior complaints by not incorporating them in subsequent complaints. But, citing *Bonhomme v. St. James*, 2012 IL 112393, and *Foxcroft Townhome Owners Ass'n v. Hoffman Rosner Corp.*, 96 Ill. 2d 150 (1983), the appellate court ruled that the involuntary dismissal of a count that plaintiff afterward abandoned in the amended complaint cannot have *res judicata* effect. 2018 IL App (4th) 170573, ¶ 52.

¶ 41    The appellate court also distinguished *Hudson*, observing that, here, the trial court gave Ward "permission to amend, over and over again, all the way to the third amended complaint— which remained pending and completely unadjudicated at the time of the voluntary dismissal." *Id.* ¶ 53.

¶ 42     We allowed the Hospital's petition for leave to appeal. Ill. S. Ct. R. 315 (eff. July 1, 2018). We also permitted the Illinois Trial Lawyers' Association to file an *amicus curiae* brief in support of plaintiff. Ill. S. Ct. R. 345 (eff. Sept. 20, 2010).

¶ 43                                    ANALYSIS

¶ 44     The central issue is whether *res judicata* prohibits this refiled lawsuit. Whether an action is barred by *res judicata* is a question of law that this court reviews *de novo*. *Lutkauskas v. Ricker*, 2015 IL 117090, ¶ 43. "*Res judicata* is a judicially created doctrine resulting from the practical necessity that there be an end to litigation and that controversies once decided on their merits shall remain in repose." *Village of Bartonville v. Lopez*, 2017 IL 120643, ¶ 49. Under the doctrine of *res judicata*, "a final judgment on the merits rendered by a court of competent jurisdiction bars a subsequent action between the same parties or their privies involving the same cause of action." *Richter*, 2016 IL 119518, ¶ 21. The bar extends not only to what was decided in the first action but also includes those matters that could have been decided in the initial action. *Lopez*, 2017 IL 120643, ¶ 49.

¶ 45     For *res judicata* to apply, three requirements must be met: "(1) a final judgment on the merits rendered by a court of competent jurisdiction; (2) identity of cause of action; and (3) identity of parties or their privies." *Wilson*, 2012 IL 112898, ¶ 9. The party invoking the doctrine bears the burden of showing its applicability. See *Hayashi v. Illinois Department of Financial & Professional Regulation*, 2014 IL 116023, ¶ 45. Here, the dispute centers on the finality requirement, as the parties concede that the other two conditions have been satisfied. Thus, we only address finality. We have observed that the requirement of a final judgment is a "critical component" in establishing that *res judicata* applies. *Hernandez v. Pritikin*, 2012 IL 113054, ¶ 41.

¶ 46     This court's most recent exposition on finality for purposes of *res judicata* is *Richter*. In *Richter*, the plaintiffs filed a three-count complaint against the defendant, a corporation, alleging damages caused by the defendant's termination of their agreement to supply dairy products. In count I the plaintiffs sought shareholder remedies pursuant to a statute, in count II the plaintiffs brought a fraud claim pursuant to a statute, and in count III the plaintiffs alleged common-law fraud. The trial court denied the defendant's motion to dismiss as to count I but granted it as to the remaining counts. The court gave the plaintiffs leave to file an amended complaint within 30 days. The plaintiffs ultimately chose not to amend their complaint but proceeded on the count that survived dismissal. Years later, the plaintiffs voluntarily dismissed the action under section 2-1009 of the Code.

¶ 47     The following year, the plaintiffs refiled the action against the defendant based on its earlier termination of the agreement to provide dairy products. In count I of the new complaint, the plaintiffs sought shareholder remedies. In count II, based on the defendant's alleged concealment of a section in its bylaws, the plaintiffs alleged misrepresentation. In count III, the plaintiffs alleged common-law fraud, and in count IV, they alleged that the defendant breached its fiduciary duty to them. The defendant moved to dismiss the refiled action, contending, as relevant here, that it was barred by *res judicata*. The trial court agreed with the defendant, but the appellate court reversed. It determined that the order dismissing the fraud counts in the initial action was not a final order.

¶ 48    As in this case, the issue in *Richter* was whether the trial court's dismissal order was final and therefore *res judicata* applied. This court affirmed the appellate court's judgment, holding that "[a]n order that dismisses the counts of a complaint, but grants the plaintiff leave to amend, is not 'final' because the order does not terminate the litigation between the parties." *Richter*, 2016 IL 119518, ¶ 25. We clarified that "a dismissal 'without prejudice' signals that there was no final decision on the merits and that the plaintiff is not barred from refiling the action." *Id.* ¶ 24. Rather, we referred to such an order as interlocutory, noting that the trial court has inherent power to review, modify, or vacate interlocutory orders while it retains jurisdiction over the entire controversy. *Id.* ¶¶ 25, 28.

¶ 49    Similarly, here, when the trial court granted the Hospital's motions to dismiss the original, first amended, and second amended complaints, it did so without prejudice and with permission to refile. Upon each involuntary dismissal, the court granted Ward leave to file an amended complaint. The dismissal orders neither terminated the litigation nor firmly established the parties' rights. Accordingly, the dismissal orders were not final and had no *res judicata* effect.

¶ 50    Despite *Richter*'s holding, the Hospital contends that Illinois Supreme Court Rule 273 (eff. Jan. 1, 1967) requires a different result. The rule provides: "Unless the order of dismissal or a statute of this State otherwise specifies, an involuntary dismissal of an action, other than a dismissal for lack of jurisdiction, for improper venue, or for failure to join an indispensable party, operates as an adjudication upon the merits." *Id.* But as we explained in *Richter*, a dismissal order will be deemed "on the merits" under Rule 273 "[i]f a circuit court involuntarily dismisses a plaintiff's action, other than for one of the rule's three exceptions, and if the plaintiff *does not procure leave of court to refile* the complaint or if a statute does not guarantee that opportunity." (Emphasis added.) 2016 IL 119518, ¶ 24. Stated differently, a dismissal order is a final adjudication on the merits under Rule 273 when the order specifies that it is "with prejudice" or when the trial court denies leave to file an amended complaint. *Id.* ¶ 25. None of the dismissal orders entered in this case was "with prejudice," and the trial court each time granted Ward leave to amend. Therefore, the orders did not constitute final adjudications on the merits. See also *Smith v. Central Illinois Regional Airport*, 207 Ill. 2d 578, 585 (2003) ("The court's decision to grant leave to amend indicates that defendants' motions were not final dispositions of the case, and thus it cannot be considered a final order.").

¶ 51    The fact that the dismissal orders were without prejudice and were with leave to file amendments distinguishes this case from *Hudson*. There, the plaintiffs voluntarily dismissed their willful and wanton misconduct count after their negligence claim had been dismissed with prejudice. *Hudson*, 228 Ill. 2d at 466. Because a final judgment had been entered as to the negligence claim in *Hudson*, we held that *res judicata* barred the plaintiffs from refiling the willful and wanton misconduct count. *Id.* at 473-74.

¶ 52    This case is also distinguishable from *Rein*. There, the plaintiffs alleged that defendants had fraudulently misrepresented the character of certain securities. *Rein*, 172 Ill. 2d at 327. The complaint included rescission counts and counts alleging common-law fraud. *Id.* at 329. After the trial court granted the defendants' motion to dismiss the rescission counts with prejudice, the plaintiffs voluntarily dismissed the remaining counts and appealed the dismissal of the rescission counts. *Id.* at 329-30. The appellate court upheld the trial court's dismissal order. *Id.* at 330. The plaintiffs thereafter initiated another lawsuit that attempted to recast the rescission counts and revive the common-law fraud counts. *Id.* at 331. We held that *res judicata* barred

the refiled lawsuit because (i) there had been an adjudication on the merits of the rescission counts and (ii) the plaintiffs could have resolved all claims in the initial action. *Id.* at 336-39.

¶ 53    Here, as we have noted, Ward was repeatedly granted leave to amend his complaint, and no final judgment was entered as to any of his claims. Thus, this case is like *Richter*, where we explained that, when a dismissal is without prejudice and with leave to file an amended complaint, there is no final decision on the merits and the plaintiff is permitted to refile the action. 2016 IL 119518, ¶ 25.

¶ 54    The Hospital attempts to distinguish *Richter* on the ground that, when Ward filed amended complaints in this case, he did not replead counts that had previously been dismissed. Because Ward abandoned those counts, it contends that the trial court's dismissals became final judgments on the merits. *Richter* offers no support for its position; therefore, the Hospital relies on pre-*Richter* appellate court decisions such as *Kiefer v. Rust-Oleum Corp.*, 394 Ill. App. 3d 485 (2009).

¶ 55    In *Kiefer*, the plaintiff suffered injuries allegedly caused by the defendants' products. He filed an amended complaint, claiming strict product liability and negligence. The trial court determined that the applicable law did not recognize a cause of action based on strict product liability, and it dismissed the amended complaint. The court granted leave to amend, and the plaintiff eventually filed a fourth amended complaint, asserting causes of action for negligence. Weeks before trial, the plaintiff voluntarily dismissed his claims under section 2-1009 of the Code (735 ILCS 5/2-1009 (West 2006)). The following year, when the plaintiff refiled the lawsuit, the defendants moved to dismiss, claiming that *res judicata* barred it. The trial court granted the defendants' motions. *Kiefer*, 394 Ill. App. 3d at 486-88.

¶ 56    On appeal, the court in *Kiefer* rejected the plaintiff's claim that the "order dismissing his strict product liability claims in [the original action] was not a 'final' order because it granted him 'leave to amend' and did not contain the words 'with prejudice.' " *Id.* at 493-94. Although the plaintiff's observations about the dismissal order were accurate, the appellate court found them "far from dispositive regarding the effect of the order." *Id.* at 494. Rather, because the order determined the merits of the plaintiff's strict liability claim, the appellate court ruled that "[t]he inclusion of the words 'leave to amend' and the absence of the words 'with prejudice' " did not affect its finality. *Id.* at 495.

¶ 57    As should be clear from our earlier discussion of *Richter*, *Kiefer* does not survive it. Again, when a trial court's order dismisses certain counts of a complaint but grants the plaintiff leave to amend, the order does not terminate the litigation or establish the parties' rights. As such, it cannot be deemed final. See *Richter*, 2016 IL 119518, ¶¶ 24-25. In *Kiefer*, the order dismissing the strict product liability claims did not terminate the litigation, and it did not firmly establish the parties' rights. Accordingly, it was not a final judgment for *res judicata* purposes. Because the rationale adopted in *Kiefer* conflicts with *Richter*, we expressly overrule *Kiefer*.

¶ 58    Turning back to this case, the appellate court correctly determined that *res judicata* did not bar Ward's refiled action. However, we part company with the appellate court's analysis in certain respects.

¶ 59    Contrary to *Richter*'s dictates, the appellate court conducted its *res judicata* analysis on a count-by-count basis through the various complaints, even though the trial court's dismissals were without prejudice and with leave to amend. See 2018 IL App (4th) 170573, ¶ 52. The court properly recognized that Ward's failure to replead counts that had been previously

dismissed "did not make the dismissal of those counts a final order for purposes of *res judicata*." *Id.* But the court went on to conclude that, "by granting the plaintiff permission to file an amended complaint, the trial court vacates the designation of 'with prejudice' in its dismissal of individual counts of the original complaint." *Id.* ¶ 51.

¶ 60 We find no support for that determination. Indeed, in *Richter*, this court rejected defendant's request for an "automatic final judgment mechanism," whereby an involuntary dismissal order would become a final adjudication on the merits after the expiration of the temporary leave period. 2016 IL 119518, ¶ 29. Likewise, in this case, we decline to rule that the trial court undoes its dismissal with prejudice of certain counts by giving a plaintiff the opportunity to replead other counts. *Cf. People v. Creek*, 94 Ill. 2d 526, 531 (1983) ("The term with prejudice has a well-recognized legal import; it *** is as conclusive of the rights of the parties as if the suit had been prosecuted to a final prosecution adverse to the complainant." (Internal quotation marks omitted.)).

¶ 61 Here, because the trial court always granted leave to amend, the appellate court should have asked whether any order dismissing any of the complaints terminated the litigation and firmly established the parties' rights as to any cause of action. See *Richter*, 2016 IL 119518, ¶ 25. The dismissals of Ward's original, first amended, and second amended complaints accomplished neither of those objectives; therefore, there was no final judgment for *res judicata* purposes.

¶ 62 We end with a few observations. Under section 2-1009 of the Code, a "plaintiff may, at any time before trial or hearing begins *** dismiss his or her action or any part thereof as to any defendant, without prejudice." 735 ILCS 5/2-1009(a) (West 2016); see also *Case v. Galesburg Cottage Hospital*, 227 Ill. 2d 207, 215 (2007) (observing that plaintiff has "the absolute right to refile a dismissed complaint"). That said, Rule 219(e) provides that "[a] party shall not be permitted to avoid compliance with discovery deadlines, orders or applicable rules by voluntarily dismissing a lawsuit." Ill. S. Ct. R. 219(e) (eff. July 1, 2002).

¶ 63 Here, both in his brief and at oral argument, Ward admitted that his decision to voluntarily dismiss the initial action was based on his disagreement with the trial court's rulings. Rule 219(e) strikes the delicate balance between preserving a plaintiff's absolute right to refile, while discouraging noncompliance with the trial court's orders. As the committee comments concerning Rule 219(e) demonstrate, the paragraph does not change existing law as to a plaintiff's right to seek a voluntary dismissal; "[h]owever, this paragraph does clearly dictate that when a case is refiled, the court shall consider the prior litigation in determining what discovery will be permitted, and what witnesses and evidence may be barred." Ill. S. Ct. R. 219(e), Committee Comments (rev. June 1, 1995).

¶ 64 Finally, this court has noted that "nothing is more critical to the judicial function than the administration of justice without delay." *Muskat v. Sternberg*, 122 Ill. 2d 41, 48 (1988). This case was filed roughly 10 years ago, yet it remains at the pleading stage. Throughout the tortured history of this litigation, neither the parties nor the trial judge exhibited any urgency to resolve the matter in a timely or efficient manner. Ward filed allegations against unknown parties and alleged that physicians had breached their duty of care, though he later conceded that he "was unaware of such a breach." Such allegations led to inevitable motion practice, resulting in dismissals and additional amendments. Nor was the Hospital blameless regarding

the sluggish pace of this case. The trial court in the refiled action observed that both parties had not complied with the court's discovery order in the prior case.

¶ 65    As the trial court suggested, the public's confidence in the judicial system weakens when cases stall. Both Mr. Ward's family and the Hospital deserve a timely resolution of this dispute.

¶ 66                                    CONCLUSION

¶ 67    In sum, we hold that none of the orders dismissing counts of the various complaints in the initial action were final. The lack of finality renders the doctrine of *res judicata* inapplicable. For these reasons, the judgment of the appellate court is affirmed. The cause is remanded to the trial court for further proceedings consistent with this opinion.

¶ 68    Appellate court judgment affirmed.

¶ 69    Circuit court judgment reversed.

¶ 70    Cause remanded.

¶ 71    CHIEF JUSTICE KARMEIER, specially concurring:

¶ 72    I concur with the majority's holding that *res judicata* does not bar plaintiff's refiled action. The majority's analysis, however, departs from our *res judicata* principles with respect to the dismissal order addressing plaintiff's initial complaint. I therefore write separately to clarify when an involuntary dismissal is final for the purposes of *res judicata* and to explain why the dismissal order regarding plaintiff's initial complaint was nevertheless not a final adjudication.

¶ 73    Plaintiff's initial complaint contained nine counts. Counts I through III were against defendant, counts IV through VI were against Decatur Memorial Hospital Home Health Services, and counts VII through IX were against unknown employees of defendant. The trial court dismissed counts II, III, and VI without prejudice and with leave to amend. It also dismissed counts I and IV without prejudice but expressly declined to address plaintiff's request to replead these counts until plaintiff became appointed as administrator of decedent's estate. The trial court also dismissed counts VII, VIII, and IX, with no indication that it granted leave to amend these counts and no designation of whether the dismissal was with or without prejudice. Thereafter, plaintiff filed three amended complaints. The first and second amended complaints were dismissed, in their entirety, without prejudice and with leave to amend. Plaintiff then voluntarily dismissed the third amended complaint and refiled the action. The trial court granted defendant's motion to dismiss the refiled action based on *res judicata*. The appellate court reversed.

¶ 74    The majority opinion affirms the appellate court and determines that *res judicata* did not bar plaintiff's refiling. To support this determination, the majority relies on *Richter* and finds that all dismissals here were not final because none of the dismissals were with prejudice and all the orders granted leave to amend. The majority's application of our *res judicata* principles, however, is flawed.

¶ 75    In its analysis, the majority asserts that "a dismissal order is a final adjudication on the merits under Rule 273 when the order specifies that it is 'with prejudice' or when the trial court denies leave to file an amended complaint." *Supra* ¶ 50. While this statement is essentially true, it is not an accurate portrayal of Rule 273.

¶ 76    Rule 273 actually provides that, "[u]nless the order of dismissal or a statute of this State otherwise specifies, an involuntary dismissal of an action, other than a dismissal for lack of jurisdiction, for improper venue, or for failure to join an indispensable party, operates as an adjudication upon the merits." Ill. S. Ct. R. 273 (eff. Jan. 1, 1967). While a dismissal designated with prejudice is usually a final adjudication under Rule 273, the designation of "with prejudice" or an explicit denial for leave to amend is not required for an involuntary dismissal to be a final adjudication. This court has adhered to the rule that "for purposes of Rule 273, where a dismissal order does not specify that it is 'without prejudice,' or that plaintiff was granted leave to file an amended complaint, the dismissal order is a final adjudication on the merits." *Richter v. Prairie Farms Dairy, Inc.*, 2016 IL 119518, ¶ 25.

¶ 77    An involuntary dismissal with no designation of being with or without prejudice is final, because such a dismissal does not "otherwise specify" as required under Rule 273. See *Bejda v. SGL Industries, Inc.*, 82 Ill. 2d 322, 328 (1980) ("Since the court's order does not specify otherwise, we assume, as Rule 273 requires, that the court intended the dismissal to operate as an adjudication upon the merits, *i.e.*, with prejudice."). Accordingly, the majority misled its own analysis by inverting Rule 273 to require a court to specify when an involuntary dismissal is final rather than specifying when it is not final.

¶ 78    The order that dismissed counts VII, VIII, and IX of plaintiff's initial complaint did not designate whether the dismissal of those counts was with or without prejudice. Because the trial court did not otherwise specify as to the finality of counts VII, VIII, and IX, the majority erred in determining that all the dismissals were without prejudice.

¶ 79    The majority also erred in determining that all the dismissals in the order addressing plaintiff's initial complaint were not final on the basis that the order granted a limited opportunity for leave to amend. To support its conclusion, the majority relied on a statement made in *Richter* regarding the principles of finality for the purposes of appeal. Specifically, the majority cites that " '[a]n order that dismisses the counts of a complaint, but grants the plaintiff leave to amend, is not "final" because the order does not terminate the litigation between the parties.' " *Supra* ¶ 48 (quoting *Richter*, 2016 IL 119518, ¶ 25). The majority's analysis, however, tears this statement from the context in which *Richter* discussed it and ignores the substantive effect of the dismissal order here.

¶ 80    In *Richter*, the plaintiffs filed a three-count complaint against the defendant. *Richter*, 2016 IL 119518, ¶ 7. The trial court denied the defendant's request to dismiss count I but dismissed counts II and III with leave to amend the complaint within 30 days. *Id.* ¶ 9. After the plaintiffs elected not to amend, they proceeded on count I. *Id.* The plaintiffs then voluntarily dismissed the action. *Id.* ¶ 10. Subsequently, they refiled the action alleging the same counts as the prior action and one additional count. *Id.* ¶ 12. The defendant filed a motion to dismiss the refiled action based on *res judicata*. *Id.* ¶ 13. The trial court dismissed the action, but the appellate court reversed. *Id.* ¶¶ 13-14. This court affirmed the appellate court. *Id.* ¶ 54.

¶ 81    In determining that the dismissal order was not a final adjudication on the merits, this court discussed the principles regarding finality for the purposes of appeal. *Id.* ¶ 25. The discussion concluded that a dismissal with leave to amend is ultimately a dismissal without prejudice and, correspondingly, not a final adjudication on the merits. See *id.* The statement, which the majority relies on, was discussed only in this context.

¶ 82        By discussing the principles of finality for the purposes of appeal, *Richter* did not imply a rule that an order that allows leave to amend a portion of an action renders any final judgment within that order as to another portion of the action nonfinal or that an interlocutory order cannot contain a final judgment. Rather, this court considered this statement strictly in light of Rule 273, the controlling authority to determine whether an involuntary dismissal is a final judgment.

¶ 83        Rule 273 provides that an involuntary dismissal order is final, unless the order or a statute otherwise specifies or the dismissal was based on lack of jurisdiction, improper venue, or for failure to join an indispensable party. Ill. S. Ct. R. 273 (eff. Jan. 1, 1967). Using the principles regarding finality for the purposes of appeal as guidance, *Richter* clarified that granting leave to amend satisfies the requirement that the trial court "otherwise specifies" to the finality of an involuntary dismissal to render the dismissal not final for the purposes of *res judicata*, pursuant to Rule 273. *Richter*, 2016 IL 119518, ¶¶ 25-26.

¶ 84        As a result, our *res judicata* principles after *Richter* remain unaltered. In order to be "final," a judgment must dispose of the rights of the parties on the entire case or on a separate part of the action. *Dubina v. Mesirow Realty Development, Inc.*, 178 Ill. 2d 496, 502 (1997). Rule 273 provides the controlling standards to determine whether an involuntary dismissal is a final adjudication. Ill. S. Ct. R. 273 (eff. Jan. 1, 1967). To determine whether a judgment is final, courts look to the substance, rather than the form. *Richter*, 2016 IL 119518, ¶ 24.

¶ 85        Because a judgment may be final only as to part of an action, a trial court may accord finality to a judgment regarding any claim that it intended to definitively resolve, regardless if litigation continues on another claim. See *Rein v. David A. Noyes & Co.*, 172 Ill. 2d 325 (1996) (dismissal of the rescission count was a final adjudication for the purposes of *res judicata*, although litigation continued on the common-law counts); *Hudson v. City of Chicago*, 228 Ill. 2d 462 (2008) (dismissal of the negligence claim was a final adjudication for the purposes of *res judicata*, although litigation continued on plaintiff's willful and wanton misconduct count). Accordingly, an interlocutory order that is not final for the purposes of appeal may also be a final judgment as to a part of an action for the purposes of *res judicata*. See *Dubina*, 178 Ill. 2d at 503; Ill. S. Ct. R. 304(a) (eff. Mar. 8, 2016). By disregarding this principle, as the majority has done, reviewing courts run the risk of contravening our *res judicata* precedent that requires courts to look at the substantive effect of a dismissal. *Richter*, 2016 IL 119518, ¶ 24. Consequently, the majority erred in determining all dismissals in the order addressing plaintiff's original complaint were not final adjudications because, by containing the phrase "leave to amend," the order was interlocutory and not final.

¶ 86        Instead, we should separately analyze the substantive effect of each individual dismissal within an order pursuant to Rule 273 to determine whether any of the dismissals were final adjudications. It was unnecessary to clarify this standard in *Richter* because the same judgment was imposed on all the dismissed counts. Nonetheless, it is clear that *Richter* supports such analysis.

¶ 87        Because the dismissal order granted leave to amend all the dismissed counts in *Richter*, this court determined the trial court "otherwise specified" to the finality of all the involuntarily dismissed claims. *Id.* ¶ 26. Therefore, "there was no final adjudication on the merits of any of those three claims." *Id.* ¶ 40. To the contrary, the dismissal order here did not grant a general leave to amend all the dismissed counts or the complaint in its entirety. The trial court explicitly

- 14 -

allowed leave to amend counts II, III, and VI; declined to address plaintiff's request for leave to amend counts I and IV until a condition was met; and simply dismissed counts VII, VIII, and IX with no indication regarding the finality of the dismissal. Without a grant for leave to amend the complaint in its entirety, the trial court did not "otherwise specify" as to the finality of the dismissal of counts VII, VIII, and IX. As a result, the dismissal of counts VII, VIII, and IX would be final unless a statute provided otherwise or the dismissal fell into an exception listed in Rule 273. Ill. S. Ct. R. 273 (eff. Jan. 1, 1967).

¶ 88    In making this determination, I note that the majority rejected the appellate court's contention that, "by granting the plaintiff permission to file an amended complaint, the trial court vacates the designation of 'with prejudice' in its dismissal of individual counts of the original complaint." 2018 IL App (4th) 170573, ¶ 51; see *supra* ¶¶ 59-60. To support this rejection, the majority provides an explanatory parenthetical that the term "with prejudice" is conclusive of the rights of the parties. *Supra* ¶ 60. As explained above, the majority overlooks that an involuntary dismissal may also be conclusive of the rights of the parties absent a designation of "with prejudice." *Supra* ¶¶ 79-82. Taking this misunderstanding into consideration, the majority also seemingly agrees that the grant of leave to amend as to one claim does not affect the finality for the purpose of *res judicata* with respect to another claim.

¶ 89    Although I do not find that all the dismissal orders in this case were without prejudice and with leave to amend, I nevertheless find the dismissal of counts VII, VIII, and IX was not a final adjudication on the merits because it falls into an exception listed in Rule 273: lack of jurisdiction. Ill. S. Ct. R. 273 (eff. Jan. 1, 1967).

¶ 90    It is a historical tenet that "a court only entertains subject matter jurisdiction over justiciable matters—a matter in controversy between an actual plaintiff and an actual defendant." *Bogseth v. Emanuel*, 166 Ill. 2d 507, 514 (1995). Parties to a litigation must be designated by name, not "by mere *descriptio persona*." *Goodkind v. Bartlett*, 153 Ill. 419, 423 (1894). A court therefore lacks subject-matter jurisdiction over a claim against an unknown party, unless a statute confers jurisdiction to sue an unknown or fictitious person. *Bogseth*, 166 Ill. 2d at 513-14.

¶ 91    Plaintiff filed counts VII, VIII, and IX against unknown employees of defendant. Yet, plaintiff has not presented, in the trial court or before this court, a statute that would confer jurisdiction to sue the unknown employees of defendant. Thus, as the trial court noted, the dismissal of counts VII, VIII, and IX was based on lack of subject-matter jurisdiction. Since the basis of the trial court's dismissal of these counts was jurisdictional, the dismissal falls squarely within an exception listed in Rule 273 and was not a final adjudication on the merits.

¶ 92    While I disagree with the majority's construction of finality for the purposes of *res judicata* and its application of that construction to counts VII, VIII, and IX, I concur with the majority's reasoning regarding the remaining dismissal orders. A claim dismissed without prejudice or with leave to amend is not a final adjudication for the purposes of *res judicata*. *Richter*, 2016 IL 119518, ¶ 25. The trial court dismissed all other claims in this action without prejudice and/or with leave to amend. The prior action therefore had no final orders disposing of the rights of the parties as to any part of the action, and *res judicata* does not bar plaintiff's refiled action.

¶ 93    For the foregoing reasons, I specially concur.

¶ 94    JUSTICES THOMAS and NEVILLE join in this special concurrence.