**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2023 IL App (3d) 220459-U

Order filed July 13, 2023

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2023

| | | |
|---|---|---|
| AMERICAN STORM CONTRACTORS, INC. | ) | Appeal from the Circuit Court |
| | ) | of the 12th Judicial Circuit, |
| Plaintiff-Appellee, | ) | Will County, Illinois. |
| | ) | |
| v. | ) | |
| | ) | |
| THOMAS A. KERNAGIS, JR.; DAWN A. | ) | |
| KERNAGIS; UNKNOWN OWNERS and | ) | Appeal No. 3-22-0459 |
| UNKNOWN LIEN CLAIMANTS, | ) | Circuit No. 21-CH-420 |
| | ) | |
| Defendants | ) | |
| | ) | |
| (Thomas A. Kernagis, Jr. and Dawn A. | ) | |
| Kernagis, | ) | The Honorable |
| | ) | John C. Anderson |
| Defendants-Appellants). | ) | Judge, Presiding. |

_____

JUSTICE McDADE delivered the judgment of the court.
Presiding Justice Holdridge and Justice Davenport concurred in the judgment.

_____

**ORDER**

¶ 1      *Held*:   The trial court had jurisdiction to rule on the plaintiff's section 2-1401 petition seeking to vacate the dismissal of its complaint, and the grant of that petition was within the trial court's sound discretion.

¶ 2   This appeal arises from the grant of a section 2-1401 petition filed by the plaintiff, American Storm Contractors, Inc. ("ASC"), seeking to vacate the involuntary dismissal of its complaint against the defendants, Thomas A. Kernagis Jr. and Dawn A. Kernagis (together, "Kernagis"). On appeal, Kernagis argues that the trial court lacked jurisdiction to hear and decide the section 2-1401 petition and that if the court had jurisdiction, it erroneously granted the petition, which failed to allege sufficient facts. We affirm the trial court's order and remand the cause for further proceedings.

¶ 3   <center>I. BACKGROUND</center>

¶ 4   In November 2021, ASC filed a three-count complaint against Kernagis in the Will County circuit court. In the first count of the complaint, ASC sought to foreclose its mechanic's lien on certain real property in Crete, Illinois. The second count alleged Kernagis's breach of the parties' contract. Alternatively, the third count sought relief based on principles of *quantum meruit*. The trial court granted Kernagis leave to file an answer by April 19, 2022, but, on that date, Kernagis instead filed a motion to dismiss ASC's complaint under section 2-615 of the Code of Civil Procedure (Code) (735 ILCS 5/2-615 (West 2020)).

¶ 5   In the section 2-615 dismissal motion, Kernagis argued that the counts in ASC's complaint were factually insufficient. The first count was legally insufficient to warrant foreclosure of the mechanic's lien because it: (1) failed to sufficiently allege the requisite contract; (2) failed to name all necessary parties; and (3) inconsistently claimed that the alleged contract was both oral and written. Similarly, the motion asserted that count II's breach of contract claim was insufficient for failing to adequately state the existence of a contract. Finally, the motion argued that ASC's equitable claim for *quantum meruit* relief failed because it sought recovery for services allegedly covered by the parties' contract and included allegations that

<center>2</center>

more closely resembled a claim for unjust enrichment. Kernagis filed the notice of motion to dismiss and served ASC's counsel with e-mail notice on April 20, 2022, and an initial hearing on the motion was set for April 26.

¶ 6　　　After acknowledging receipt of the notice and motion to dismiss, ASC's counsel requested 28 days to respond. At the April 26 motion hearing, the trial court set a briefing schedule for Kernagis's dismissal motion, granting ASC's request for 28 days to respond and giving Kernagis 21 days to reply, and set the matter for hearing on June 28. ASC did not object to Kernagis's motion to dismiss or appear at the hearings held on April 26 or June 28. At the June 28 hearing, the trial court entered an order involuntarily dismissing ASC's complaint with prejudice.

¶ 7　　　On August 19, ASC filed a petition pursuant to section 2-1401 of the Code (735 ILCS 5/2-1401 (West 2020)), seeking to vacate the involuntary dismissal order and set a new briefing schedule. In response, Kernagis filed a second section 2-615 motion to dismiss, this time asserting that: (1) ASC's section 2-1401 petition was not a proper means of seeking the *vacatur* of an involuntary dismissal order; (2) the trial court had lost jurisdiction to vacate or modify its June 28 dismissal order; and (3) ASC's section 2-1401 petition was insufficient as a matter of law. ASC filed a reply in support of its section 2-1401 petition on October 11, and, after hearing the parties' arguments, the trial court took the case under advisement. In a written order dated October 20, 2022, the trial court granted ASC's section 2-1401 petition without explanation, vacating its prior involuntary dismissal order and ordering the parties to brief Kernagis's original section 2-615 motion to dismiss. Kernagis filed a timely notice of appeal.

¶ 8　　　　　　　　　　　　　　　　　II. ANALYSIS

3

¶ 9       On appeal, Kernagis raises two issues: (1) whether the trial court had jurisdiction to grant ASC's section 2-1401 petition to vacate the earlier dismissal order and (2) whether ASC's section 2-1401 petition was insufficient as a matter of law on its merits.

¶ 10                                    A. Jurisdiction

¶ 11      Kernagis contends that under section 2-1203 of the Code (735 ILCS 5/2-1203(a)) (West 2022)), the trial court lost jurisdiction over this case 30 days after the issuance of its final and appealable order involuntarily dismissing ASC's complaint with prejudice on June 28. According to Kernagis, the trial court lost jurisdiction on July 28, 30 days after the entry of its dismissal order, when ASC failed to file either a motion to reconsider or a notice of appeal from that judgment. Ill. S. Ct. R. 303(a)(1) (eff. July 1, 2017); *Chicago Architectural Metals, Inc. v. Bush Construction Co., Inc.*, 2022 IL App (1st) 200587, ¶ 41 (explaining that a section 2-1203 motion has "a very unique nature, with specific time deadlines with jurisdictional consequences" and "applies to 'cases tried without a jury.' "). Because jurisdiction presents a question of law, we review the issue *de novo*. *City of Chicago v. City of Kankakee*, 2019 IL 122878, ¶ 20.

¶ 12      Kernagis relies on the temporal filing limits in section 1203(a), which states:

"§ 2-1203. Motions after judgment in non-jury cases.

(a) In all cases tried without a jury, any party may, within 30 days after the entry of the judgment or within any further time the court may allow within the 30 days or any extensions thereof, file a motion for a rehearing, or a retrial, or modification of the judgment or to vacate the judgment or for other relief." 735 ILCS 5/2-1203 (West 2020).

¶ 13      Kernagis asserts that because ASC did not file a section 2-1203 motion to reconsider within 30 days after the June 28 dismissal order, the trial court lost jurisdiction over the case in

July, invalidating its October 20 order granting ASC's August 19 section 2-1401 motion to vacate. See *In re Marriage of Mitchell*, 181 Ill. 2d 169, 174 (1998) (stating "[i]f jurisdiction is lacking, any subsequent judgment of the court is rendered void and may be attacked collaterally"). ASC's section 2-1401 petition attempted to obtain an invalid "second-shot" at briefing Kernagis's original April section 2-615 dismissal motion. Kernagis adds that no case law supports the application of the revestment doctrine to resurrect the trial court's jurisdiction, making its October 20 order void *ab initio*.

¶ 14     Initially, we examine the first prong of Kernagis's two-prong attack on the trial court's jurisdiction, which asserts that pursuant to section 2-1203, the court lost jurisdiction after July 27 when ASC failed to timely exercise either of its two options for seeking relief from the June 28 involuntary dismissal order by filing either a section 2-1203 motion or a notice of appeal. We disagree with Kernagis's contention that those two options constituted ASC's only potential sources of relief.

¶ 15     As our supreme court noted in *Sarkissian v. Chicago Board of Education*, 201 Ill. 2d 95, 101 (2002), "[s]ection 2-1401 of the Code of Civil Procedure [citation] authorizes a party to seek relief from a final judgment, such as a default judgment, when brought more than 30 days after judgment has been entered." The trial court's involuntary dismissal of ASC's complaint with prejudice on June 28 was undoubtedly a final and appealable order. "Unless the order of dismissal or a statute of this State otherwise specifies, an involuntary dismissal of an action, other than a dismissal for lack of jurisdiction, for improper venue, or for failure to join an indispensable party, operates as an adjudication upon the merits." Ill. S. Ct. R. 273 (eff. Jan. 1, 1967). "Stated differently, a dismissal order is a final adjudication on the merits under Rule 273

5

when the order specifies that it is 'with prejudice' or when the trial court denies leave to file an amended complaint." *Ward v. Decatur Memorial Hospital*, 2019 IL 123937, ¶ 50.

¶ 16 Despite recognizing that the trial court's June 28 ruling constituted a final order, Kernagis maintains that section 2-1401(a) is inapplicable here. Section 2-1401(a) states:

> "(a) Relief from final orders and judgments, after 30 days from the entry thereof, may be had upon petition as provided in this Section. *** *All relief heretofore obtainable* and the grounds for such relief heretofore available, whether by any of the foregoing remedies or otherwise, *shall be available in every case, by proceedings hereunder, regardless of the nature of the order or judgment from which relief is sought or of the proceedings in which it was entered.* Except as provided in the Illinois Parentage Act of 2015, *there shall be no distinction between actions and other proceedings, statutory or otherwise, as to availability of relief, grounds for relief, or the relief obtainable*." (Emphases added.) 735 ILCS 5/2-1401(a) (West 2022).

¶ 17 Applying the plain statutory language, section 1401(a) permitted ASC to seek relief from the trial court's June 28 final dismissal order more than 30 days after its entry. Kernagis's contrary construction conflicts with the plain and ordinary meaning of the statutory language, which is the best indicator of legislative intent, and renders portions of that language mere surplusage. See *International Ass'n of Fire Fighters, Local 50 v. City of Peoria*, 2022 IL 127040, ¶ 12 (explaining that " '[t]he fundamental rule of statutory interpretation is to ascertain and give effect to the legislature's intent, and the best indicator of that intent is the statutory language, given its plain and ordinary meaning.' [Citation.] 'No part of a statute should be rendered

6

meaningless or superfluous.' [Citation.]"). We hold that the trial court had jurisdiction to hear and rule on ASC's section 2-1401 petition; its order granting that petition was not void *ab initio*. Due to our resolution of the jurisdictional question, we need not consider the applicability of the revestment doctrine in this case.

¶ 18                                      B. Sufficiency of the Section 2-1401 Petition

¶ 19            Kernagis next contends that the trial court should have denied ASC's section 2-1401 petition because it was insufficient as a matter of law. To succeed on the merits of that petition, ASC had to establish three factors by a preponderance of the evidence: (1) the existence of a meritorious claim in the original action; (2) its due diligence in presenting that claim; and (3) its due diligence in filing its section 2-1401 petition. *Warren County Soil & Water Conservation District v. Walters,* 2015 IL 117783, ¶ 51. Because a section 2-1401 petition challenging a final judgment can be premised on either legal or factual grounds, the nature of those grounds determines the proper standard of review on appeal. *Id.* ¶ 31. Here, ASC's petition asserted a factual challenge to the underlying involuntary dismissal order, leading us to review the trial court's ruling for an abuse of discretion. *Id.* ¶ 51. When undertaking that review, we will examine the particular facts, circumstances, and equities present in this case. *Id*. ¶ 50.

¶ 20            Kernagis argues that ASC failed to establish the first section 2-1401 factor by alleging specific facts sufficient to satisfy Illinois's fact-pleading requirements and, instead, merely alleged the existence of "a meritorious claim." In its verified reply filed in support of the section 2-1401 petition, ASC expressly incorporated the key factual allegations from the underlying complaint and also referenced the verified complaint, which was part of the record when the trial court considered the section 2-1401 petition. Notably, section 2-1401(b) permits the petition to "be supported by affidavit or other appropriate showing as to matters not of record." 735 ILCS

5/2-1401(b) (West 2022). Because ASC's verified complaint and reply were part of the trial record, both the trial judge and this court may consider those allegations in reviewing the petition.

¶ 21    In its complaint, ASC alleged that Kernagis owed it $29,875.36 for construction work the parties had contracted that it perform on the Kernagis's property. The complaint also specifically asserted that the work had been completed in a workmanlike manner and that ASC had filed a mechanic's lien on the property. Those factual allegations are sufficient to overcome the low bar of establishing by a preponderance of the evidence that ASC had meritorious and fact-based claims against Kernagis for foreclosure of its mechanic's lien, breach of the parties' contract, and, alternatively, for recovery under principles of *quantum meruit*. We conclude that ASC satisfied the requirement that its complaint state a meritorious claim.

¶ 22    Turning to the second factor that ASC's section 2-1401 petition had to establish by a preponderance of the evidence, namely, due diligence in presenting its original claim, we next examine the affidavit by ASC's counsel that was attached to the petition. See *id*. ¶ 51 (stating the necessary elements in a section 2-1401 petition). In that affidavit, counsel stated that he received by e-mail a motion to dismiss from Kernagis's counsel on April 20, 2022, just as ASC's counsel was departing for a trip to Europe. While ASC's counsel did not immediately notice any problems with his e-mail on returning to the office in May, during the week before counsel filed the section 2-1401 petition, he discovered that "hundreds of emails had disappeared from [his] computer and phone." The missing e-mails were sent between January 28 and sometime in July. At the time the petition was filed on August 19, the cause of the problem remained unknown, with counsel's web host blaming his internet carrier and his internet carrier blaming his web host. The e-mails that were missing included Kernagis's April 20 e-mail notifying counsel of the

8

section 2-615 motion to dismiss, as well as e-mails containing the trial court's April 26 and June 28 orders. The April 26 order set the briefing schedule on Kernagis's dismissal motion, granted ASC's request for additional response time, and set a hearing date of June 28 on that motion. The June 28 order involuntarily dismissed ASC's complaint with prejudice after a hearing. The affidavit submitted by ASC's counsel also asserted that he "had no record of the motion to dismiss in this case" due to the missing e-mails. Similarly, ASC's section 2-1401 petition claimed that its counsel "missed the briefing and hearing on [Kernagis's section 2-615 motion to dismiss] due to a loss of several months emails that he incurred while he was out of the country in April."

¶ 23        Kernagis argues that a section 2-1401 petition was never intended to provide relief from the mistakes or negligence of a party or its counsel. *Id.* ¶ 38 (citing *Smith v. Airoom, Inc.*, 114 Ill. 2d 209, 222 (1986)). Nothing in the record or the parties' arguments, however, suggests that the e-mails disappeared due to the mistake or negligence of either ASC or its counsel. While questions of fact may remain about the precise nature and cause of the e-mails' disappearance, the section 2-1401 petition and sworn affidavit filed by ASC's counsel asserted a satisfactory basis for the trial court to conclude that ASC had established due diligence in presenting its original claim by the preponderance of the evidence.

¶ 24        The final element ASC needed to establish in its section 2-1401 petition was its due diligence in filing that petition. *Warren County,* 2015 IL 117783, ¶ 51. Kernagis argues that ASC failed to make that showing because: (1) the petition did not allege that ASC was unaware of the June 28 dismissal order or unable to discover that order by exercising reasonable diligence; and (2) ASC's verified reply in support of its petition should not be considered on appeal because it was not timely filed in the trial court, having been due on October 7 but not successfully e-filed

9

until October 11. Addressing Kernagis's last argument first, we conclude that the argument was forfeited when Kernagis treated ASC's reply as timely in the circuit court and failed to object to the late filing prior to submitting its initial brief in this court. *Shaun Fauley, Sabon, Inc. v. Metropolitan Life Insurance Co.*, 2016 IL App (2d) 150236, ¶ 55.

¶ 25  Finally, we examine Kernagis's claims the section 2-1401 petition failed to adequately allege that ASC did not know about the trial court's June 28 dismissal order and that it could not have discovered the order through the exercise of due diligence. We conclude that Kernagis's claims are not supported by the record on appeal.

¶ 26  ASC's section 2-1401 petition asserted that it was "made with due diligence immediately after [ASC's] attorney became aware of the [unexplained loss of several months of emails] *and said dismissal*." (Emphasis added.) Moreover, the affidavit by ASC's counsel that was attached to the petition explained that due to that loss, he did not have any e-mails notifying him of either Kernagis's motion to dismiss or the entry of the trial court's April 26 and June 28 orders. He added that the inexplicable disappearance of hundreds of e-mails "[a]pparently *** did not all happen at once" and "stopped in July." After discovering the problem, counsel maintained that he acted quickly and with due diligence. Because those allegations were before the trial court, we conclude it was not an abuse of its discretion to grant ASC's section 2-1401 petition, vacate its prior involuntary dismissal of ASC's complaint, and set a new briefing schedule and hearing date for Kernagis's original section 2-615 motion to dismiss.

¶ 27                                          CONCLUSION

¶ 28  For the reasons stated, we affirm the judgment of the circuit court of Will County and remand the cause for further proceedings in that court.

¶ 29  Affirmed and remanded.

10